651 F.Supp. 86 (1986)
Barbara HARTKE, Peter Borkowski, Christine Sanchez, Plaintiffs,
v.
CHICAGO BOARD OF ELECTION COMMISSIONERS, Michael E. Lavelle, Corneal A. Davis, and James R. Nolan, Defendants.
v.
Betty J. WILLHOITE, Rev. Jesse W. Cotton, Mary E. Zuniga, and City of Chicago, Intervenors-Defendants.
No. 86 C 7473.
United States District Court, N.D. Illinois, E.D.
October 16, 1986.
*87 Gerald R. Statza, Brown & Statza, Chicago, Ill., for plaintiffs.
Matthew J. Piers, Roger Pascal, Barbara Hermanson, Hubert Thompson, Deputy Corp. Counsel, City of Chicago, Chicago, Ill., for intervenor City of Chicago.
Thomas Johnson, Cecile Singer, Chicago, Ill., for intervenors Willhoite, Cotton and Zuniga.
Michael Levinson, Franklin Lunding, Jr., Corp. Counsel, City of Chicago, Chicago, Ill., for Chicago Bd. of Election Com'rs.

MEMORANDUM OPINION AND ORDER
GETZENDANNER, District Judge:
Plaintiffs Barbara Hartke, Peter Borkowski, and Christine Sanchez (the "Hartke plaintiffs") bring this 42 U.S.C. § 1983 action to challenge the constitutionality of the failure of defendants to place upon the ballot in the City of Chicago for the November 4, 1986 election a referendum on whether to establish a nonpartisan system for the election of Chicago's officers. Defendants are Chicago Board of Election Commissioners (the "Board"), Michael E. Lavelle, Chairman of the Board, Corneal A. Davis, Board member, and James R. Nolan, Board member. The Board is a duly appointed governmental body charged by statute with accepting duly filed petitions seeking to place referenda on the ballot. Intervenor-defendants are the City of Chicago, Betty J. Willhoite, Reverend Jesse W. Cotton, and Mary E. Zuniga. Each of the three individual intervenor-defendants filed formal objections to the nonpartisan election referendum with the Board.
Currently before the court are motions of all defendants to dismiss this action on the grounds of res judicata or "claim preclusion." The parties have presented materials outside the pleadings on this issue. Since the court apprised the parties at the October 8, 1986 status hearing that it would accept all materials presented on the defense of res judicata, and since the parties have agreed to the expedited briefing schedule on this defense, the court accepts these materials and converts the motions to dismiss into motions for summary judgment. As such, the motions are granted and judgment is entered against the plaintiffs.
The following facts are undisputed. On July 29, 1986, the City Council of Chicago adopted resolutions authorizing three advisory referenda to be submitted to the voters at the November 4 elections. On August 18, 1986, Anthony Hasell, William Lipinski, Richard F. Mell, Robert Molaro, and Stuart H. Simon (the "Lipinski plaintiffs") filed petitions before the Board seeking to place on the November 4 ballot the nonpartisan election referendum. After public hearing, the Board ruled on September 3 that the nonpartisan election referendum could not appear on the November 4 ballot because the City's three advisory referenda were already certified to appear on the ballot. The Board applied Section 28-1 of the Illinois Election Code, Ill.Rev. Stat. ch. 46, to prohibit the placement of more than three referenda on any one ballot.
The Lipinski plaintiffs sought judicial review and mandamus in the Circuit Court of Cook County. In their complaint, the Lipinski plaintiffs claimed, inter alia, that the *88 three-referenda limit of section 28-1 as the Board applied it is "prohibited by the First Amendment of the United States Constitution and 42 U.S.C. § 1983. Lipinski Complaint at ¶ 22. Those plaintiffs also claimed the Board's September 3 actions were "arbitrary and capricious and completely contrary to ... the United States Constitution." Id. at ¶ 28. The plaintiffs prayed for an order requiring the defendants to place the nonpartisan election referendum on the November ballot. See Lipinski Prayer at ¶ A. On September 16, 1986, the court issued an opinion denying plaintiffs' request to reverse the Board and their request for mandamus. See Lipinski v. Chicago Board of Election Commissioners, No. 86 C 231 slip op. (Cir.Ct.Cook Cty. Sept. 16, 1986). On October 1, the Illinois Supreme Court issued a one-paragraph order affirming the lower court's decision to the extent that it affirmed the Board's decision that the nonpartisan election referendum not be placed on the November 4 ballot. See Lipinski v. Chicago Board of Election Commissioner, 114 Ill.2d 95, 102 Ill.Dec. 417, 500 N.E.2d 39 (1986).
In the instant action, the plaintiffs (the "Hartke plaintiffs") allege that the application of the three-referenda limit of section 28-1 is unconstitutional because it "den[ied] access to the ballot for [their] referendum," it "denied their rights to associate together and express their political support for [their] referendum," and it "deprived plaintiffs and like-minded signatories, circulators, and voters [of] their First Amendment right to petition the Government for grievances...." Count I. The complaint also alleges that the Board's September 3 decision was "arbitrary and capricious and treats [the] referendum, its signatories, circulators, and supporting voters differently ... in violation and denial of their Fourteenth Amendment right to equal protection." Count II. Finally, the complaint alleges the Board's decision "deprived plaintiffs ... of their civil rights under color of law in violation of 42 U.S.C. Sec. 1983." Count III. The plaintiffs pray for a declaration of unconstitutionality and an order requiring the defendants to place the nonpartisan election referendum on the November ballot. See Hartke Prayer at ¶¶ 1, 2, 3, 4.
The sole question presented by the current round of briefs is whether the state court litigation bars the instant action as a matter of res judicata. The essential elements of res judicata are: "(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suit; and (3) an identity of parties or their privies in the two suits." Lee v. City of Peoria, 685 F.2d 196, 199 (7th Cir.1982). Once these three requirements are met, res judicata bars relitigation of issues which "were or could have been raised" in the prior action. Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).
The first requirement is met here. In Lipinski et al. v. Chicago Board of Election Commissioners, No. 86 C 231 slip op. (Cir.Ct. Cook Cty. Sept. 16, 1986), aff'd 114 Ill.2d 95, 102 Ill.Dec. 417, 500 N.E.2d 39 (1986), the Illinois Circuit Court reached the merits of the Lipinski plaintiffs' claim that they were entitled to have the Board place the nonpartisan election referendum on the November 4 ballot. The "merits" of an adjudication pertains to the substantive rights of the parties. A simple reading of the Circuit Court opinion shows that it fully addressed the merits. Indeed, the court even addressed the merits of the plaintiffs' federal constitutional rights.
The plaintiffs argue that the rule of three referenda per ballot announced in Sec. 28-1 of the Election Code should not be applied. The constitutionality of the rule of three was tested and held valid in George [Georges] v. Carney, 546 F.Supp. 468 [469] (1982) affirmed 691 F.2d 297 ([7th Circuit,] 1982). The court concluded that limiting the ballot to three public questions was a rational means to avoid confusion that may result from a cluttered ballot and that the first-come, first-serve basis for placing the questions on the ballot was a legitimate means for implementing the limitation....

*89 This court affirms the constitutionality of the rule of three.... The fact that the ballot is already filled by advisory or binding questions does not stand as a deprivation of one's access to the ballot or voting rights. The statute merely provides that, if there are already three validly initiated referenda on the ballot to be considered by the voters of a political subidivision [sic], additional valid referenda can be considered at a subsequent election.
Id. at 13-14. The citation to Georges v. Carney was particularly appropriate since that case addressed and rejected first and fourteenth amendment challenges to section 28-1. The Circuit Court's reliance on Georges thus shows that the Circuit Court reached and decided not only the merits of the Lipinski plaintiffs' case (which is all that is necessary for the first requirement of res judicata) but also reached and decided the merits of the federal constitutional claims. The affirmance of that decision by the Illinois Supreme Court renders that decision final as well on the merits.
The only argument plaintiffs raise on this first requirement of res judicata is that because there is no clear indication that the constitutional issues were actually addressed, and in the absence of that clarity, res judicata is not available. Plaintiffs' proposition is true only for purposes of collateral estoppel, or issue preclusion. If it is unclear whether a particular issue was actually decided in a prior litigation, then collateral estoppel will not bar litigation of that issue in a subsequent proceeding. See Jones v. Alton, 757 F.2d 878, 885 (7th Cir.1985). In any event, as the preceding quotation plainly demonstrates, federal constitutional issues were decided. Plaintiffs' argument would be relevant only if, from the language of the state decision, it could not be determined whether the state court had reached the merits of the issues presented. Cf. Harl v. LaSalle, 679 F.2d 123, 126 & n. 5 (7th Cir.1982) (implying in dictum that an ambiguous dismissal precludes application of res judicata); see also Tamari v. Bache & Co. (Lebanon) S.A.L., 637 F.Supp. 1333, 1342 (N.D.Ill.1986) (holding the same). But in this case such a contention would be ridiculous. The entire Circuit Court opinion addresses the substantive rights, and hence the merits, of the plaintiffs. One part of the opinion directly addresses the merits of the federal constitutional arguments. The first prong of res judicata has therefore been met.
The second requirement of res judicata is an identity of causes of action. The causes of action here and in the state court are identical.
[A] cause of action consists of a single core of operative facts which give the plaintiff a right to seek redress for the wrong concerned.... If the same facts are essential to the maintenance of both proceedings or the same evidence is needed to sustain both, then there is identity between the allegedly different causes of action asserted, and res judicata bars the action.
Lee v. City of Peoria, 685 F.2d at 200 (quoting Morris v. Union Oil Co. of California, 96 Ill.App.3d 148, 157, 51 Ill.Dec. 770, 421 N.E.2d 278 (5th Dist.1981)). Under this test, the causes of action in the two cases are identical. The single core of operative fact common to both this case and the state action is the Board's refusal to place the nonpartisan election referendum on the November 4 ballot. In both cases, both sets of plaintiffs argue that this refusal violates their rights. In both cases, they pray for a court order requiring the Board to put the referendum on the ballot. Although the legal theories for how this refusal violates the plaintiffs' rights was formulated somewhat differently in both cases, such differences do not detract from the identity of the causes of action. This is because causes of action are defined only by the facts which give the plaintiff a right to relief. Since the same facts are essential to both cases, the causes of action are identical.
The final requirement for the application of res judicata is that there be an identity of parties or privies in the two actions. The precise issue here is whether *90 the Hartke plaintiffs (the party against whom res judicata is sought to be applied) are in privity with the Lipinski plaintiffs. The parties to this suit agree that privity exists between "parties who adequately represent the same legal interests." Donovan v. Estate of Fitzsimmons, 778 F.2d 298, 301 (7th Cir.1985). See City of Chicago Br. of 10-8-86 at 5; see Pl.Br. of 10-10-86 at 2. This type of privity is present here. Stuart H. Simon, a plaintiff in the state suit, was a signatory of the nonpartisan referendum petition. Lipinski Complaint at ¶ 1 ("Stuart H. Simon ... signed a petition for the Nonpartisan Election Referendum"). All Hartke plaintiffs were signatories and circulators of the petitions. Hartke Complaint at ¶¶ 8, 9, 10. If Simon, along with the other Lipinski plaintiffs (who were alleged to be the "principal proponents of the Nonpartisan Election Referendum," see Lipinski Complaint at ¶ 1), adequately represented in state court the interests of the plaintiffs here, then there will be privity. The record plainly demonstrates that there was such adequacy of representation.
First, as the defendants cogently point out, the Hartke plaintiffs themselves realize that their interests in this action were represented adequately in the state proceedings. In their brief they state that if this court dismisses their federal complaint, "the only course of action left ... would be Certiorari to the United States Supreme Court." Pl.Br. at 5. This is an obvious reference to an appeal of the Illinois Supreme Court's affirmance. If the Hartke plaintiffs' interests were not adequately affiliated with the legal interests of the Lipinski plaintiffs, then seeking review of the Lipinski case could not afford the Hartke plaintiffs the relief they desire. By their own admission then, the plaintiffs here are adequately represented in the state litigation.
Aside from this, the prayer for relief in the Lipinski action along with the briefs the Lipinski plaintiffs presented to the Circuit Court and the Illinois Supreme Court all show that the Lipinski plaintiffs vigorously urged those bodies to force the Board to place the nonpartisan election referendum on the November 4 ballot. See Exs. B, C to City of Chicago Br. of 10-14-86. This is precisely what the Hartke plaintiffs pray for in this case. Of course, that the Board and the state courts rejected the Lipinski plaintiffs' pleas cannot be evidence of inadequate representation. The pleas were rejected only after the Lipinski plaintiffs briefed and argued at length and with competent counsel the alleged illegality of keeping the nonpartisan election referendum off the ballot. This constitutes fully adequate representation of the same interests which the Hartke plaintiffs now seek to advocate here.
The Hartke plaintiffs contend that the Lipinski plaintiffs did not adequately represent their interests in the state court proceedings because: (1) "the [Hartke plaintiffs] had no contact with Stuart Simon ...," (2) they "had no input into the [Lipinski] litigation ...," and (3) the "allegations of constitutional violations [in the Lipinski case] were general, not specific in nature" and "they were not addressed prominently within the pleadings nor ... well-supported by precedent." Pl.Br. at 2. As to the first two contentions, they do not impugn the integrity of the representation of interests presented by the Lipinski plaintiffs. Subsequent plaintiffs may be barred by res judicata "whether acting in concert [with] or separately" from prior litigants who raise the same cause of action. People ex rel. Castle v. Wright, 8 Ill.2d 454, 458, 134 N.E.2d 269, 272 (1956) (holding res judicata applicable to consecutive taxpayer actions).
As to the last contention, it is both legally irrelevant and wrong. Privity does not require, for purposes of "adequate representation," that the prior plaintiff raise and formulate all conceivable arguments on behalf of a cause of action in the best possible fashion. Cf. Murray v. Carrier, ___ U.S. ___, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) (in the criminal context, the constitutional guarantee of "competent" counsel does not include assurance that "counsel *91 will recognize and raise every conceivable constitutional claim"). It is sufficient that the legal theories actually adduced in support of the prior plaintiffs' prayer for relief competently advocate that same interest when prayed for by subsequent plaintiffs. The extensiveness of the pleadings, the briefing, the state appeals, and the integrity of the lawyering all demonstrate that the Hartke plaintiffs' interest in getting the nonpartisan election referendum on the ballot was competently advocated by the Lipinski plaintiffs' interest in precisely the same result. If the constitutional issues were not articulated there in exactly the fashion they are here, that only means that issues which could have been raised were not. Under res judicata, such issues are still barred. Allen v. McCurry, 449 U.S. at 94, 101 S.Ct. at 414. Finally, the suggestion that the constitutional arguments were not supported "by precedent" is no reason to deny the adequacy of representation. The lack of support only means that those arguments are not likely to be prevailing arguments. It does not mean that the arguments were poorly presented. In any event, as previously discussed, the state briefs vigorously advocated the federal constitutional claims. It is simply wrong to assert that they were not adequately presented for the state court's consideration.
In short, then, there is privity between the plaintiffs-signatories of this case and the plaintiffs (including a signatory) in the Lipinski case. Since all three prerequisites of res judicata are thus present, res judicata applies and bars this action.
Plaintiffs resist this conclusion by arguing that the state forum itself did not afford the Lipinski plaintiffs a full and fair opportunity to litigate their case. Specifically, they argue without citing to any authority that the Lipinski plaintiffs could not make a proper record to support their constitutional claims before the Board because the Board lacked jurisdiction over constitutional matters. Assuming that the Board did lack such jurisdiction, plaintiffs fail to show what evidence they would have made part of the record but could not because of this lack of jurisdiction. The Lipinski plaintiffs were certainly able to put evidence into the record on other matters at the public hearing. This, of course, included the essential fact that the Lipinski plaintiffs sought placement of the nonpartisan election referendum on the November 4 ballot. When the Board's decision refusing to do so was appealed to the Circuit Court, that court had jurisdiction to entertain constitutional challenges to the Board's decision. E.g. Sperling v. County Officers Electoral Board, 57 Ill.2d 81, 309 N.E.2d 589 (1974); Lizak v. Zadrozny, 4 Ill.App.3d 1023, 283 N.E.2d 252 (1st Dist.1972). The Board's decision refusing to put the referendum on the ballot, of course, was a matter of record. The federal constitutional challenge went only to this refusal and this was a pure question of law. No evidence beyond what was already in the record was necessary in order for the Lipinski plaintiffs to fully and fairly argue the unconstitutionality of the Board's application of section 28-1. Therefore, the Circuit Court's confinement of itself to the Board's record cannot in any way affect the fullness and the fairness of the opportunity the Lipinski plaintiffs had to argue the Constitution and obtain the relief they sought there and the Hartke plaintiffs seek hereplacement of the nonpartisan election referendum on the November 4 ballot.
The Hartke plaintiffs' final plea for suspending the application of res judicata is an appeal to the public interest. To the extent that the public interest weighs into the res judicata calculus at all, it unquestionably favors the application of the bar. If res judicata is not applied in this case and the court decides against plaintiffs on the merits, under plaintiffs' theory they need only find another signatory of the petition and file another lawsuit to make yet another attempt to obtain their desired relief. The filing of identical lawsuits despite prior adverse judgments will then continue until either the plaintiffs win or the election finally occurs. This hardly accords with the public's interest that there be an end and finality to litigation.

*92 Conclusion
The court, therefore, determines that this action is barred under the doctrine of res judicata. Under that doctrine, the plaintiffs are barred from relitigating the issues which were litigated in the state court action. Accordingly, this court does not reach or decide any of the constitutional issues raised by the plaintiff. Nor does this court by its decision today indicate agreement or disagreement with the decision of the state court.
The defendants' motions to dismiss, treated as motions for summary judgment, are granted. Judgment shall enter in favor of the defendants and against the plaintiffs. This case is dismissed.
It is so ordered.