**Robert H. TICE, et al., Plaintiff,**

v.

**AMERICAN AIRLINES, INC., Defendant.**

No. 95 C 6890.

United States District Court,
N.D. Illinois,
Eastern Division.

March 31, 1997.

Alan Michael Serwer, Bell, Boyd & Lloyd, Chicago, IL, for plaintiffs.

Jerold Sherwin Solovy, Jenner & Block, Chicago, IL, Scott A. Wharton, Schreeder, Wheeler & Flint, Atlanta, GA, Gordon Dean Booth, Jr., Booth, Wade & Campbell, Atlanta, GA, Terence G. Connor, Morgan, Lewis & Bockius, Miami, FL, L. Dale Owens, Atlanta, GA, for defendant.

## *MEMORANDUM OPINION AND ORDER*

ANN CLAIRE WILLIAMS, District Judge.

On November 27, 1995, plaintiffs Robert H. Tice and other former American Airline pilots ("plaintiffs"), filed their complaint against defendant, American Airlines, Inc. ("American") alleging that American violated the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. §§ 621 et seq. (1994). The matter is before the court on American's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). For reasons set forth below, the court grants American's motion.

### *Background*

#### I. Current Case

The Federal Aviation Administration's ("FAA") "Age 60 Rule" 14 C.F.R. § 121.383(c), provides that no person may serve as a pilot if that person has reached his/her sixtieth birthday. The "Age 60 Rule", however, does not prevent former pilots from serving as flight officers after their sixtieth birthdays.[1] (Complaint ¶ 10.) Plaintiffs, twelve retired American captains, wanted to continue their careers after their sixtieth birthdays in the flight officer (flight engineer) position. (Complaint ¶ 11; Pls.' Reply to Def.'s Mot. at 1.) American, however, refused to downbid plaintiffs to the flight officer position, thus forcing plaintiffs to retire.[2] (Complaint ¶¶ 12–13.)

Plaintiffs claim American's refusal to downbid them to the flight officer position was because of age and, thus, violates the ADEA. (Complaint ¶ 19.) In response, American moves this court for judgment on the pleadings. In *Johnson v. American Airlines*, 745 F.2d 988 (5th Cir.1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985), the Fifth Circuit allowed American's policy of hiring only future captains as flight officers to stand. Consequently, American argues that, in light of *Johnson*,

the doctrine of res judicata [claim preclusion] or collateral estoppel [issue preclusion] bars plaintiffs' claim.[3]

#### II. Earlier Suit

In *Johnson*, twenty-two ex-captains for American, represented by plaintiffs' attorney, sued American for violating the ADEA. *See id.* at 990–91. Their action arose at the intersection of the FAA's "Age 60 Rule" and American's up-or-out policy. *See id.* at 991. The plaintiffs, American flight crew members, desired employment as flight officers after their sixtieth birthdays since they could no longer serve as pilots under the "Age 60 Rule". *Id.* at 991. American's up-or-out policy, however, requires that all flight officers be capable of advancing to pilot positions. *Id.; See also EEOC*, 48 F.3d at 165 (citation omitted). Therefore, pilots over the age of sixty can not downbid to flight officer because American requires that all flight officers be able to advance to the pilot position. In other words, a sixty year old flight officer can not advance to the pilot position under the Age 60 Rule and American's up-or-out policy. *Id.; See also EEOC*, 48 F.3d at 165 (citation omitted). Based on this policy, American, allegedly in violation of the ADEA, refused to downbid the sixty-year-old, ex-captains to the flight officer position. *See id.*

In response, American claimed its up-or-out policy was a bona fide occupational qualification ("BFOQ").[4] *See id.* At trial, American presented evidence of the various effects

---

1. American's aircraft operating crew mainly consists of a captain [pilot], copilot, and flight officer. The captain is in command of all aspects of the aircraft and its crew. The copilot, second in command, assists the captain in flying the aircraft. The flight officer monitors the aircraft's fuel, electrical, hydraulic and other systems before, during, and after the flight but does not pilot the aircraft. *Johnson v. American Airlines*, 745 F.2d 988, 990 (5th Cir.1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985); *See also Equal Employment Opportunity Commission ("EEOC") v. American Airlines*, 48 F.3d 164, 165 (5th Cir.1995).

2. A "downbid" is a request by an employee to move from a position of seniority to a lesser position.

3. American also argues that the D.C. and Fifth Circuit's decisions in *Murnane et al. v. American Airlines, Inc.*, 482 F.Supp. 135 (D.D.C.1979), *aff'd*, 667 F.2d 98 (D.C.Cir.1981), *cert. denied*, 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982) and *EEOC v. American Airlines, Inc.*, 48 F.3d 164 (5th Cir.1995), respectively, preclude plaintiffs' claim. For the reasons set forth below, however, the court disagrees.

4. A BFOQ is a qualification for employment that is "reasonably necessary to the normal operation of the business," even though it may result in what would otherwise constitute prohibited discrimination. 29 U.S.C. § 623(f)(1). The ADEA allows an employer to discriminate on the basis of age if the employee's age is a BFOQ. *See Johnson*, 745 F.2d at 991.

of employing sixty-year-old, ex-captains as flight officers when they could no longer advance to the captain position because of the "Age 60 rule". *See id.* The jury found in favor of American, concluding that American's policy was in fact a BFOQ and, therefore, American's actions did not violate the ADEA. *See id.* The *Johnson* plaintiffs appealed, arguing that the trial court erred in instructing the jury.[5] *See id.* The Fifth Circuit, however, held that the district court did not commit reversible error and affirmed the jury's verdict. *See Id.* at 995 ("We conclude that American's reasons for its policy qualify as a BFOQ defense."),

#### Motion for Judgment on the Pleadings

The court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion to dismiss. *See Frey v. Bank One,* 91 F.3d 45, 46 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997); *Alexander v. City of Chicago,* 994 F.2d 333, 335 (7th Cir.1993); *Thomason v. Nachtrieb,* 888 F.2d 1202, 1204 (7th Cir.1989). Thus, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *See United States v. Wood,* 925 F.2d 1580, 1581 (7th Cir.1991) (citation omitted); *See also Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990) (motion to dismiss); *Colfax Corp. v. Illinois State Toll Highway Auth.,* 79 F.3d 631, 632 (7th Cir.1996) (motion to dismiss) (citation omitted). The court will not grant the motion unless "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Frey,* 91 F.3d at 46; *Thomason,* 888 F.2d at 1204.

The court, however, need not strain to find inferences favorable to plaintiffs which are not apparent on the face of the complaint; on the other hand, it will resolve ambiguities in plaintiffs favor. *See Early v. Bankers Life and Casualty Co.,* 959 F.2d 75, 79 (7th Cir. 1992) (motion to dismiss); *Coates v. Illinois State Bd. of Educ.,* 559 F.2d 445, 447 (7th Cir.1977) (motion to dismiss). Additionally, the court "may not look beyond the pleadings, and all uncontested allegations to which the parties had an opportunity to respond are taken as true."[6] *Alexander,* 994 F.2d at 335. The court, however, "may take into consideration documents incorporated by reference to the pleadings." *Wood,* 925 F.2d at 1582 (citation omitted).

Lastly, the court may take judicial notice of matters of public record. *See Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir.1994); *Wood,* 925 F.2d at 1582.

#### Analysis

▄▄▄ The main issue before the court is whether the doctrine of res judicata[7] bars plaintiffs from litigating this ADEA suit. In this ADEA suit, plaintiffs seek appraisal of their rights regarding American's refusal to downbid sixty-year-old captains to the flight officer position. If Johnson precludes plaintiffs' claim, however, then the court will not reappraise plaintiffs' rights. Because *Johnson,* the alleged preclusive action, was a federal court case, federal principles determine what preclusive effects, if any, it has on the present plaintiffs' action. *See EEOC v. Harris Chernin, Inc.,* 10 F.3d 1286, 1289 n. 4 (7th Cir.1993) (citing *Barnett v. Stern,* 909 F.2d 973, 977 (7th Cir.1990)) ("[w]here the earlier action is brought in federal court, the federal

---

5. The *Johnson* plaintiffs presented various other arguments to the Fifth Circuit, however, they are not relevant to this court's discussion. *See Johnson,* 745 F.2d 988.

6. Plaintiffs argue that American's motion for judgment on the pleadings does not comply with Fed.R.Civ.P. 12(c) and must be denied on its face. Plaintiffs support this argument by stating that American's success on this motion depends upon the court accepting certain representations that American failed to introduce in its answer. The court, however, disagrees with this argument. Rather, as discussed below, the court is

rendering its decision based solely on allegations in plaintiffs' complaint.

7. Some courts and commentators use the term "res judicata" to encompass both forms of preclusion—claim preclusion and issue preclusion. *See Allen v. McCurry,* 449 U.S. 90, 94 n. 5, 101 S.Ct. 411, 415 n. 5, 66 L.Ed.2d 308 (1980). More specifically, the Restatement of Judgments refers to "claim preclusion" as res judicata and "issue preclusion" as collateral estoppel. *See id.* (citing Restatement (Second) of Judgments § 74 (Tent. Draft No. 3, Apr. 15, 1976)).

rules of res judicata apply."); *In re Energy Coop. Inc.,* 814 F.2d 1226, 1230 (7th Cir.), *cert. denied,* 484 U.S. 928, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987); *accord Porn v. National Grange Mut. Ins. Co.,* 93 F.3d 31, 33–34 (1st Cir.1996). Furthermore, under the doctrine of res judicata or collateral estoppel, district judges treat decisions by other district judges and other circuits as controlling. *See Colby v. J.C. Penney Co.,* 811 F.2d 1119, 1124 (7th Cir.1987) (explaining that different outcomes in different courts may place a defendant under inconsistent obligations).

In a classic discussion of the federal principles of issue and claim preclusion, the Supreme Court explained:

A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel [or issue preclusion] and res judicata [or claim preclusion], is that a 'right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies....' Under collateral estoppel [or issue preclusion], once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.

*Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) (citations omitted); *see Allen v. McCurry,* 449 U.S. 90, 94 n. 5, 101 S.Ct. 411, 415 n. 5, 66 L.Ed.2d 308 (1980) (clarifying terminology). The Supreme Court went on to observe that

Application of [res judicata and collateral estoppel] is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction. To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Montana,* 440 U.S. at 153–54, 99 S.Ct. at 973–74 (citations omitted).

■ Claim preclusion requires that two suits be linked by the same cause of action. If this link exists, claim preclusion operates as a bar to all issues previously litigated or potentially litigated in the initial litigation. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). Res judicata or claim preclusion applies only if there exists: (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suit; and (3) an identity of parties or their privies in the two suits. *Brzostowski v. Laidlaw Waste Systems, Inc.,* 49 F.3d 337, 338 (7th Cir.1995) (citation omitted); *Hartke v. Chicago Board of Election Commissioners,* 651 F.Supp. 86, 88 (N.D.Ill. 1986).

■ Issue preclusion, on the other hand, requires not that the suits arise from the same cause of action, but that they raise the same issue(s). A finding of issue preclusion, in contrast to claim preclusion, operates to bar merely the previously litigated issue, and not the entire claim. "Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a later suit on a different cause of action involving a party to the first case." *Allen,* 449 U.S. at 94, 101 S.Ct. at 414. Collateral estoppel or issue preclusion does not apply unless: (1) the issue at stake is identical to an issue in the prior litigation; (2) the issue in the prior litigation was actually litigated; (3) the determination of the issue in the prior litigation was essential to final judgment; and (4) the party precluded from relitigating the issue was represented in the prior litigation. *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 906 (7th Cir.1990) (citing *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987)); *Gray v. Lacke,* 885 F.2d 399, 406 (7th Cir.1989), *cert. denied,* 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990).

■ Before barring an action, both claim and issue preclusion require the court to find an "identity of parties" or privities. This requirement guarantees that the litigants

have an adequate opportunity to be heard. *Rush v. Superintendent of Police*, 93 C 1675, 1994 WL 114847, *4 (N.D.Ill., Apr.4, 1994). "Concepts summarized by the term privity are looked to as a means of determining whether the interests of the party against whom claim preclusion is asserted were represented in the prior litigation." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir.1995). Although privity is an elusive concept, *Matter of L & S Industries, Inc.*, 989 F.2d 929, 932 (7th Cir. 1993), it generally denotes a relationship that is sufficiently close to justify issue or claim preclusion, *First Options of Chicago, Inc. v. Kaplan*, 913 F.Supp. 377, 383 (E.D.Pa.1996). "Privity between parties is established where those parties' interests are so closely aligned that they represent the same legal interests." *In re Chicago Police Officer Promotions*, No. 91 C 668, 1991 WL 134218, *5 (N.D.Ill. July 16, 1991) (quoting *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 688 & n. 9 (7th Cir.1986)). Thus, nonparties may satisfy the "identity of parties" requirement and, if so, the prior action will preclude them. *See People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 177 (7th Cir.1995) ("[T]he preclusive effects of judgments have been expanded to apply to nonparties, and *res judicata* can sometimes operate to bar the maintenance of an action by persons who were ... not parties to the initial action." (citations omitted)).

 The doctrine of virtual representation enables courts to find privity between parties.[8] Even if a person was not named in the prior judgment, he may be bound if one of the parties to the suit was so "closely aligned with his interests as to be his virtual representative." *Id.* (citation omitted); *See also L & S Industries, Inc.*, 989 F.2d 929 (citation omitted). "[I]f he is so closely

aligned with ... the parties ..., then his concerns have certainly received adequate representation." *See People Who Care*, 68 F.3d at 177. The party in the original action, however, "must have had 'every reason to prosecute or defend the case as vigorously' as the party to the subsequent suit." *Rush*, 1994 WL 114847, *4 (citing *Petit v. City of Chicago*, 766 F.Supp. 607 (N.D.Ill.1991)). Virtual representation may be used to determine whether two parties are in privity for purposes of either issue or claim preclusion.

In this case the court can apply either res judicata [claim preclusion] or collateral estoppel [issue preclusion], because the parties have combined these two concepts. The court will only address the case for preclusion by res judicata [claim preclusion]—the more preclusive of the two doctrines. Claim preclusion's standard is more stringent because it bars not only the previously litigated issues, but all claims based on the prior cause of action. *See Montana*, 440 U.S. at 153, 99 S.Ct. at 973; *See also Harris Chernin, Inc.*, 10 F.3d at 1290 n. 5 (quoting in dicta a Seventh Circuit case which held that a "relaxed concept of finality is acceptable for issue preclusion, and clearly implie[d] that it is not acceptable for claim preclusion." (citation omitted)). Furthermore, it is clear that the issue involved in this case, whether American violated the ADEA, is identical to the issue addressed in *Johnson*. Collateral estoppel's requirement of identical issues is its only departure from the res judicata standard. Thus, if the other two res judicata elements are established, issue preclusion will also apply to this case. *See also Hartke*, 651 F.Supp. at 88.

## I. Final Judgment on the Merits

 The final judgment in the *Johnson* litigation satisfies the first requirement

---

8. Plaintiffs argue that "it is far from clear whether [the doctrine of virtual representation] necessarily applies ... in this circuit." (Pls.' Resp. at 10.) To the contrary, however, in *EEOC v. Harris Chernin, Inc.*, 767 F.Supp. 919 (N.D.Ill.1991), an ADEA action, the district court found that privity existed between the plaintiff and the EEOC via the doctrine of virtual representation. Furthermore, on appeal, without using the term "virtual representation," the Seventh Circuit court of appeals affirmed the lower court's find-

ings on virtual representation. *See EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1291 (7th Cir. 1993). Additionally, a number of courts from the Northern District of Illinois apply this doctrine. *See In re Chicago Police Officer Promotions*, No. 91 C 668, 1991 WL 134218 (N.D.Ill., July 16, 1991); *Maguire v. Selcke*, No. 90 C 21, 1990 WL 70451 (N.D.Ill., May 7, 1990); *Hartke v. Chicago Bd. of Election Commissioners*, 651 F.Supp. 86 (N.D.Ill.1986).

of res judicata. "The 'merits' of an adjudication pertains to the substantive rights of the parties." *Hartke*, 651 F.Supp. at 88. *Johnson* was a jury trial in which twenty ex-captains seeking to downbid to the flight officer position sued American for violating the ADEA. *Johnson*, 745 F.2d at 990. The jury in *Johnson* returned a verdict for American upon finding that it had a valid ADEA defense to the plaintiffs' claim. *See id.* Subsequently, the plaintiffs appealed and the Fifth Circuit, affirming the lower court, held that "American's reasons for its policy [of not employing pilots in the flight officer position after their sixtieth birthdays] qualify as a BFOQ defense." *Id.* at 993; *See also Hartke*, 651 F.Supp. at 89 ("The affirmance of that decision ... renders that decision final as well on the merits.") Thus, the substantive rights of the *Johnson* plaintiffs under the ADEA were addressed and finally determined.

## II. Identity of the Causes of Action

The *Johnson* litigation and the ADEA claim presently before the court also satisfy the second requirement of identical causes of action. A cause of action consists of a single core of operative facts which gives the plaintiff a right to seek redress for the wrong concerned. *Brzostowski*, 49 F.3d at 339 (citing *Colonial Penn Life Ins. Co. v. Hallmark Ins. Admin., Inc.*, 31 F.3d 445, 447 (7th Cir.1994)). "Two claims are one for the purposes of res judicata if they are based on the same, or nearly the same, factual allegations." *Id.; See also People Who Care*, 68 F.3d at 177–78 (the "cause of action must be based on the same facts and raise the same issues as the cause of action in [the prior suit]. ") For instance, in *Brzostowski*, the Seventh Circuit, affirming the district court, held that the firing of the plaintiff gave rise to both suits and constituted the nucleus of factual allegations, because the resolution of both complaints revolved around whether the defendant complied with its legal obligations. *Brzostowski*, 49 F.3d at 339.

Additionally, when the court determines whether two causes of action are identical for res judicata purposes, the fact that the plaintiffs' legal theories in each case are formulated somewhat differently does not detract from the identity of the causes of action. *Hartke*, 651 F.Supp. at 89. "If the same facts are essential to the maintenance of both proceedings or the same evidence is needed to sustain both, then there is identity between allegedly different causes of action...." *Id; See also Maguire*, 1990 WL 70451, *3 ("[C]ourts ... must look beyond the legal theory expressed in the complaint and focus on the facts surrounding the claim and the injury inflicted upon the plaintiff.")

The court finds that plaintiffs' ADEA claim clearly arises out of the same core of operative facts and is based on the same factual allegations as the Johnson claim. First, both claims arose out of American's policy of denying their sixty-year-old captains' requests to downbid to the flight officer position. This so-called "forced retirement" is the nucleus of factual allegations giving rise to both claims. Additionally, the legal elements of the two claims are identical. The resolution of both complaints necessarily involves deciding whether American's actions violated the ADEA. In other words, both cases ask whether American complied with its legal obligations arising from the ADEA when it refused its sixty-year-old pilots' requests. *See also Maguire*, 1990 WL 70451, *3 (identity of causes of action found where plaintiffs attempted to challenge, in federal court, the same statute—the promulgation of which was the core of operative fact—on the identical legal theories as plaintiffs in a prior action); *Hartke*, 651 F.Supp. at 89 (identity of causes of action found where the single core of operative fact was the election board's refusal to put a referendum on the ballot—although the plaintiffs' legal theories differed).

Plaintiffs unpersuasively argue that the two cases do not encompass the same cause of action. (Pls.' Resp. at 9.) Plaintiffs focus on the Fifth Circuit's *holding* in *Johnson* to support their argument, rather than focusing on the "nucleus of factual allegations giving rise to both suits. " *See Brzostowski*, 49 F.3d at 339, (Pls. Resp. at 9.) However, the prior court's holding, the legal conclusion it rendered after considering the cause of action and plaintiffs' claim, was not the cause of action. Rather, the cause of action was the

event that propelled the plaintiffs into court. The court determines the cause of action by looking to and comparing the facts *giving* rise to the claims, not the prior holding. *See Brzostowski*, 49 F.3d at 339. Here, the cause of action that propelled the plaintiffs' into court, as stated above, was American's refusal to downbid them, which was identical to the cause of action in *Johnson*. Thus, plaintiffs' argument is meritless.

## III. Identity of the Parties or Privies

■ Finally, there must be an identity of parties or privies in the two actions for the court to invoke the doctrine of res judicata.[9] Whether plaintiffs were adequately represented in the *Johnson* action presents a more difficult question. Plaintiffs were not formal parties to the *Johnson* action. Thus, privity must exist via virtual representation. The cases applying virtual representation, however, do not set forth any express analytical framework. *Maguire v. Selcke*, No. 90 C 21, 1990 WL 70451, *4 (N.D.Ill., May 7, 1990). Rather, this district's prior decisions in this area guide the court.

In *In re Chicago Police Officer Promotions*, No. 91 C 668, 1991 WL 134218 (N.D.Ill. July 16, 1991), the district court for the Northern District of Illinois, applying the doctrine of virtual representation, found "sufficient privity ... such that the doctrine of res judicata may be considered." This case involved the question of whether 200 plaintiffs were in privity with the plaintiffs of a potentially preclusive, prior suit. *See id.* at *5. Applying the doctrine of virtual representation, the court, persuaded by a number of factors, found an identity of privity between all of the plaintiffs. *See id.* at *6. First, the court found that the legal and factual issues in the case at bar were identical to the prior case. *See id.* Next, the court found the present plaintiffs were adequately represented in the prior litigation, due to the fact that they had retained the same counsel as the

prior plaintiffs. *See id.* Additionally, the court noted that the present plaintiffs maneuvered to try and avoid the prior litigation's preclusive effects. *See id.* The court also found that all of the plaintiffs' legal interests were congruent. *See id; See also Maguire*, 1990 WL 70451, at *5 (two sets of plaintiffs who were in the same occupation and sought to challenge the application of the same statutory regulation to their occupation were in privity via virtual representation); *Rush*, 1994 WL 114847, at * 4; *Hartke*, 651 F.Supp. at 86.

Applying the virtual representation doctrine, the court finds that the legal and factual issues in this case are identical to those litigated in *Johnson*. Additionally, as in *In re Chicago Police Officer Promotions*, the same attorney representing the present plaintiffs, represented the *Johnson* plaintiffs. Consequently, the attorney had "every reason to prosecute or defend the [prior] case as vigorously" as in the present party's suit. *Rush*, 1994 WL 114847, *4 (citing *Petit v. City of Chicago*, 766 F.Supp. 607 (N.D.Ill. 1991)). Therefore, counsel adequately protected the interests of plaintiffs by vigorously prosecuting the Johnson plaintiffs' interests.

Furthermore, plaintiffs maneuvered to avoid the preclusive effects of *Johnson* by arguing that "[p]laintiffs' complaint in this case does not address defendant's alleged 'future captain' policy but, instead, opposes defendant's refusal to employ them after their sixtieth birthday." (Pls.' Resp. at 8.) Plaintiffs' attempt to differentiate the policies at issue, however, is unpersuasive because denying pilots employment as flight officers after their sixtieth birthday is tied to American's "future captain" (or "up-and-out") policy. Also, plaintiffs' legal interests are congruent with the *Johnson* plaintiffs; plaintiffs, like the Johnson plaintiffs, want the court to conclude that American's actions violated the ADEA. The court's finding of privity, additionally, comports with the policies of res

---

9. American argues that, in addition to *Johnson*, *Murnane*, 482 F.Supp. 135, and *EEOC*, 48 F.3d 164, preclude plaintiffs' claim. The court, however, disagrees. The plaintiffs in those cases were pilots over age 40 who applied for and were denied employment as third-seat flight officers. *See EEOC*, 48 F.3d 164; *Murnane*, 482 F.Supp.

135. In comparison, the plaintiffs in *Johnson* and the case at bar were former American pilots over sixty who wished to downbid to the position of flight officer—American had already employed them. This distinction is significant, and, as a result, the third res judicata element is not met with regard to these two cases.

judicata: to preclude parties from contesting a matter that they had a full and fair opportunity to litigate. *Montana,* 440 U.S. at 153, 99 S.Ct. at 973. Lastly, had the *Johnson* plaintiffs succeeded on the merits, plaintiffs would have benefitted, American could not refuse retiring captains' downbid requests, and this matter would not be before the court.

Therefore, the court, drawing all inferences in favor of plaintiffs, concludes that plaintiffs were virtually represented by the Johnson plaintiffs. Plaintiffs in both cases are retired American Airline captains who, at different points in time, American refused to downbid. Thus, plaintiffs are in privity with the *Johnson* plaintiffs. *See, e.g., Maguire,* 1990 WL 70451, at *5 (privity found between plaintiffs in both cases who practiced naprapathy without a degree, and were prohibited from plying their trade by the enactment of a statute); *Hartke,* 651 F.Supp. at 91 (privity found between plaintiffs, despite the fact that the plaintiffs had no input or connection to prior litigation, where they had the same cause of action and sought the same remedy).

Consequently, plaintiffs suit is identical to the Johnson suit with regard to the parties and cause of action, thus their entire claim is precluded. "A fundamental precept of common-law adjudication ... is that a 'right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies....'" *Montana,* 440 U.S. at 153, 99 S.Ct. at 973 (1979) (citations omitted). The right put in issue by the *Johnson* plaintiffs, and directly determined at both the trial and appellate levels, cannot be relitigated. Thus, the Fifth Circuit's holding in Johnson that American's refusal to downbid sixty-year-old, retiring pilots is a bona fide occupational qualification excepted from the ADEA's requirements disposes of the claim before this court.

In sum, plaintiffs fail to state a claim for which relief can be granted. The court reaches this decision considering only the facts alleged in the complaint. After the examination of the facts in a light most favorable to plaintiffs, the court views the claim in the complaint as indistinguishable from the claim fully litigated in *Johnson.* Thus, the doctrine of res judicata applies and judgment on the pleadings in favor of American is appropriate. Furthermore, the court's decision avoids "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana,* 440 U.S. at 153–54, 99 S.Ct. at 973–74. In light of the reasons stated above, the court grants American's motion for judgment on the pleadings.

### Conclusion

For reasons set forth above, the court grants American's motion for judgment on the pleadings.