In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1976

Rixson Merle Perry,

Plaintiff-Appellant,

v.

Globe Auto Recycling, Inc., William
J. Zuccaro, William M. Zuccaro, Robert
Zuccaro, and Daniel Carmin Tarry,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 4092--William T. Hart, Judge.

Argued January 4, 2000--Decided September 19, 2000

   Before Cudahy, Kanne, and Diane P. Wood, Circuit
Judges.

   Diane P. Wood, Circuit Judge.  Rixson Perry is a
well- known user of this court's services. See
Perry v. Sheahan, Nos. 99-1079, 99-2741, 2000 WL
1006950 (7th Cir. July 21, 2000); Perry v.
Sullivan, 207 F.3d 379 (7th Cir. 2000); Perry v.
Village of Arlington Heights, 186 F.3d 826 (7th
Cir. 1999); Perry v. Pogemiller, 16 F.3d 138 (7th
Cir. 1993); and Perry v. Federal Bureau of
Investigation, 759 F.2d 1271 (7th Cir. 1985), on
rehearing en banc, 781 F.2d 1294 (7th Cir. 1986).
The present case arises out of his challenges to
the ordinances maintained by the Village of
Arlington Heights, Illinois, regarding the
seizure of abandoned automobiles. (His standing
to pursue some of these claims was at issue in
the earlier Arlington Heights litigation, 186
F.3d 826, supra.) In the course of challenging
the vehicle seizure ordinances, Perry claimed to
have discovered evidence of municipal corruption
that prompted him to sue Daniel Tarry, a Village
employee, and Globe Auto Recycling (Globe) under
the civil RICO provisions, 18 U.S.C. sec.
1964(c).

   Perry's own RICO case was dismissed with
prejudice and is not now before us. Instead,
Perry purchased for $100 the claims of another

Arlington Heights resident, Roy Lahucik, and is now pursuing those claims. The district court dismissed the case on the ground that it was barred by claim preclusion. This, we conclude, was error. It is possible that the Lahucik claims may be barred by the RICO statute of limitations, but the record as it now stands is not developed enough for us to make a judgment on that point. We therefore remand the case to the district court for further proceedings.

Perry's crusade against the Arlington Heights vehicle seizure ordinance began on October 27, 1992, when Arlington Heights Code Enforcement Officer Daniel Tarry ordered the seizure of Perry's 1975 Ford LTD. The Village ordinance then permitted seizure of abandoned vehicles without prior notice to the owner of record. In order to get his vehicle back, Perry had to pay certain fees, despite the fact that he was not given the opportunity to have a hearing concerning the validity of the seizure in the first place. Perry sued both the Village and Tarry, claiming that his federal due process rights have been violated by the Village's procedure. The district court agreed, to the extent of granting partial summary judgment in Perry's favor on the question whether the practice was unconstitutional. In the damages phase of the case, however, Perry failed to comply with various discovery requests, and eventually the judge dismissed the action as a sanction.

Down but not out, Perry responded with a number of actions based on the civil provisions of the Racketeer Influenced and Corrupt Organizations Act, more commonly known as RICO. He believed that Tarry and Globe, the company that the Village used to provide towing services, were engaged in a corrupt conspiracy to violate the rights of the hapless individuals who left their cars unattended on the streets of Arlington Heights. This group of cases, exemplified by Perry v. Tarry, No. 96-C-7027, 1997 WL 361453 (N.D. Ill. June 20, 1997), arose out of the seizure of Perry's own car. At least one of the later cases was dismissed on res judicata grounds, and an exasperated district judge ordered that "in any civil litigation commenced by Perry within this circuit against the defendants involved in this motion, the defendants may ignore his filing unless the court explicitly orders them to respond." Perry v. Tarry, No. 96-C-7027, slip op. at 9-10 (N.D. Ill. Apr. 16, 1997).

Determined to right the wrongs he perceived, Perry then went out and paid Roy Lahucik $100 for "all claims, demands, and causes of action of whatever kind and nature" arising out of the

seizure and towing of Lahucik's 1984 Chevy Suburban. The assignment was dated July 1, 1998, but the record does not reveal when the Suburban was towed. On July 2, 1998, Perry was back in court, suing in his capacity as Lahucik's assignee, again raising the RICO theory that had failed in his own lawsuits. The district court dismissed in a brief order relying on res judicata. The order stated that "[t]he assignment of the claim does not preclude privity," found that all the requirements for claim preclusion were satisfied, and bounced the case out.

It is impossible to fault the district judge for having the reaction he did to this case. At least with respect to the towing claims, Perry has been an abusive litigant, and it is easy to see why the judge concluded that the expedient of persuading other individuals to assign their claims to him should not be enough to avoid the ban on Perry's own filings. But we are concerned with the breadth of the judge's rationale, which we think would--if generalized--cast doubt on many legitimate assignments that occur every day in the world of civil litigation. There are other ways to control the misuse of judicial processes by a person like Perry, which the court will be free to consider on remand.

The court's claim preclusion rationale properly focused on the three elements of federal claim preclusion: identity of claims, identity of parties, and a prior final judgment on the merits. See, e.g., Roboserve, Inc. v. Kato Kagaku Co., 121 F.3d 1027, 1034 (7th Cir. 1997). The only element at issue here is identity of parties; Perry concedes that the claims were exactly the same (in the sense that they arose out of exactly the same ordinances and procedures used by the Village) and that there was a prior final judgment on the merits in his own case. But what about the parties? Globe argues that if Lahucik himself had brought the present case he too would be claim precluded, because of the "virtual representation" theory, but that is wrong. Indeed, one of the cases on which Globe relies is the district court's opinion in Tice v. American Airlines, Inc., 959 F. Supp. 928 (N.D. Ill. 1997), which this court later reversed in Tice v. American Airlines, Inc., 162 F.3d 966 (7th Cir. 1998), expressly finding that the idea of "virtual representation" cannot override an individual's right to his own day in court unless the facts show a strong reason why the first litigant was, in effect, a real representative (not a virtual one) of the second. See also DeBraska v. City of Milwaukee, 189 F.3d 650, 653 (7th Cir. 1999) (noting that this circuit takes a "dim view of preclusion by virtual representation in suits other than class

actions"). Perry was not Lahucik's representative in any sense of the term, and thus Lahucik would have been fully entitled to bring the present litigation on his own.

The question thus becomes whether Lahucik's decision to assign his claim to Perry transforms the claim from one that could be brought to one that is barred by Perry's earlier unsuccessful efforts. We see no reason why this should be so. Indeed, it is routine for institutions like banks or insurance companies to take assignments of large numbers of claims arising out of a single transaction or occurrence, and given the vagaries of litigation they undoubtedly win some and lose some. The more common problem arises when the assignor tries to evade claim preclusion by selling the claim to another party; in that situation, the district court's statement that assignment does not prevent a finding of privity is certainly true. As the Supreme Court put it long ago in Postal Telegraph Cable Co. v. City of Newport, 247 U.S. 464, 474-75 (1918), "[t]he ground upon which, and upon which alone, a judgment against a prior owner is held conclusive against his successor in interest, is that the estoppel runs with the property, that the grantor can transfer no better right or title than he himself has."

But we have the opposite situation here. The applicable rule is therefore the one holding that "the assignee stands in the shoes of the assignor and assumes the same rights, title and interest possessed by the assignor." Plumb v. Fluid Pump Service, Inc., 124 F.3d 849, 864 (7th Cir. 1997) (internal quotation marks and citations omitted). So, even though Perry could receive no more than Lahucik had, it is also true that he received no less. Since Lahucik had the right to bring his own claim, that is what he conveyed to Perry in the assignment. See also Kane v. Magna Mixer Co., 71 F.3d 555, 563 (6th Cir. 1995) (holding that assignee is bound by assignor's waiver); Rhode Island Hospital Trust Nat'l Bank v. Ohio Casualty Ins. Co., 789 F.2d 74, 82 (1st Cir. 1986) (noting that where judgment precedes assignment, assignee is precluded in same manner as assignor).

Globe also argues that Perry could have brought Lahucik's claim as part of his earlier litigation, but that is also not correct. Ordinarily, of course, people have no standing to assert the rights of third parties. See, e.g., Retired Chicago Police Ass'n. v. City of Chicago, 76 F.3d 856, 862 (7th Cir. 1996). None of the exceptions to that rule that permit jus tertii litigation would have permitted Perry, without a hint of consent from Lahucik, to litigate Lahucik's claims. And there is definitely no rule

(and never will be one, as far as we are concerned) under which strangers to a lawsuit might be precluded in a later action just because the first litigant hypothetically could have tried to persuade a court to certify a class.

Thus, the specific ground on which the district court dismissed Perry's action in his capacity as Lahucik's assignee was not correct. That does not mean, however, that district courts are powerless to prevent this genre of abuse. Even as an assignee, Perry was subject to the normal strictures of Rule 11 of the Federal Rules of Civil Procedure, under which both parties and their lawyers can be sanctioned for bringing frivolous lawsuits. The string of defeats Perry knew that he had suffered in his own suits gave him a very good idea of the likelihood of success another person would have on precisely the same question. In addition, if the district court is concerned that its earlier order attempting to prevent Perry from cluttering up the court with frivolous litigation was inadvertently too narrow, it can always craft a broader injunction that would cover the possibility of assignments.

Last, Globe has vaguely argued that the Lahucik claim is barred by the four-year RICO statute of limitations. It has not developed that argument in any detail, but given the district court's prior order telling Globe that it need not respond to Perry at all, we do not think it appropriate to find waiver on Globe's part. The greater problem with the limitations argument is the lack of facts in the record that would permit us to rule on it right now. The Supreme Court has recently made clear the fact that the RICO limitations period runs from "discovery of the injury, not discovery of the other elements of a claim." Rotella v. Wood, 120 S. Ct. 1075, 1081 (2000). The injury here would be the towing of Lahucik's Suburban. Even though Lahucik would not have known at the time whether the towing was wrong, the examples in Rotella drawn from the area of medical malpractice demonstrate that this makes no difference. He would have known that something amounting to injury in fact had occurred, and it would have been up to him to inquire further to see if this was also a legal wrong. Here, we know that Perry filed Lahucik's claim on July 2, 1998, but we have no idea when the vehicle was towed. On remand, the district court will be free to explore this defense if it remains relevant to the litigation.

We therefore REVERSE and REMAND this case to the district court for further proceedings consistent with this opinion. Costs on appeal will be taxed against Perry.

Cudahy, Circuit Judge, concurring in the judgment. I cannot agree that the essential element of identity of parties is absent here. Nonetheless, because I believe that the two claims may not be identical, I concur in the result.

The majority cites the following as the applicable rule: "the assignee stands in the shoes of the assignor and assumes the same rights, title and interest possessed by the assignor." Slip Op. at 5, quoting Plumb v. Fluid Pump Service, Inc., 124 F.3d 849, 864 (7th Cir. 1997). From this rule, the majority reasons that, when Perry took the assignment of Lahucik's claim, Perry also took Lahucik's right to bring the claim. However, whether Perry bought a valid claim from Lahucik--which be doubtless did--does not resolve whether the parties in the previous case and in this case are identical. The inescapable fact is that Perry was the plaintiff in the previous case and Perry is the plaintiff in the present case. Federal Rule of Civil Procedure 17(a) states that "every action shall be prosecuted in the name of the real party in interest." Further, "[t]he federal courts . . . and all of the state courts . . . have been in full accord in holding that the unconditional assignee of a complete chose in action is the real party in interest . . . ." Overseas Development Disc Corp. v. Sangamo Construction Co., Inc., 686 F.2d 498, 505 n. 17 (7th Cir. 1982) (quoting 3A James Wm. Moore et al., Moore's Federal Practice para. 17.09(1.-1) at 17-84) (now found at 4 James Wm. Moore et al., Moore's Federal Practice sec. 17.11[1][a] (3d ed. 1998)). Hence, the claim in the present case belonged to Lahucik, but the party in the present case is Perry. Put another way, Perry bought Lahucik's claim, but he did not buy his identity.

The majority intimates two policy justifications for grounding the reversal in a lack of identity between parties. First, every individual has a right to his day in court, and barring Perry because of an identity of claims might impair Lahucik's right. But that cannot be so; the majority correctly states that, regardless of Perry's initial failure on his claim, Lahucik was entitled to bring his own claim in his own name. At most, barring Perry from bringing the suit because of his prior failure would reduce by one the number of people interested in buying Lahucik's claim.

The majority also states that banks and insurance companies routinely take assignments of large numbers of claims arising out of a single transaction or occurrence, "and given the vagaries of litigation they undoubtedly win some and lose some." Slip Op. at 5. However, banks and insurance companies must buy the bulk of their claims before litigating them. If a bank bought a single claim, litigated it and lost, one might argue that the bank is (or should be) precluded from rustling up a second case to try its luck again. The situation seems different when a bank buys claims without any forewarning that the claims lack merit and then pursues them simultaneously to mixed results. In such cases, as well as here, it may be more appropriate to deny claim preclusion because the claims themselves are different in some respects.

In spite of the fact that an identity of parties is present here, the result reached by the majority is sustainable under another analysis that seems to be more consistent with the basic principles of claim preclusion. Beyond the question of identity of parties lies the need for identity of claims, and here the requirements of claim preclusion may not be met. The present RICO suit involves allegations of predicate acts of acceptance of bribes and conspiracy. Since Perry appears to have alleged a later terminal date for the conspiracy than in his previous complaints, he seems to have alleged new predicate acts of bribery. Consequently, even though Perry may have made a concession on this point, there may well be different claims here. So, even though the same party is bringing both claims, the second claim may still survive preclusion. However, on remand, Perry's claim should be limited to only the new dates of conspiracy he has alleged.