ROBOSERVE, INCORPORATED,
a Delaware corporation,
Plaintiff–Appellant,

v.

KATO KAGAKU COMPANY, LIMITED,
a Japanese company, Defendant–
Appellee.

ROBOSERVE, INCORPORATED,
a Delaware corporation,
Plainiff–Appellant,

v.

KATO KAGAKU COMPANY, LIMITED,
a Japanese company, Defendant–
Appellee.

Nos. 96–3456, 97–1843.

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1997 in No. 96–3456.

Decided July 30, 1997 in No. 96–3456.

Submitted May 16, 1997 in No. 97–1843.*

Decided July 30, 1997 in No. 97–1843.

---

* The appeal considered *infra* at III. & IV. has been submitted to the original panel under the court's Internal Operating Procedure 6(b). After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. *See* Fed.R.App.P. 34(a); Cir.R. 34(f).

Eric C. Cohen, Robert B. Breisblatt (argued), A. Sidney Katz, Laurie A. Haynie, Kara F. Cenar, Suzanne Hines, Jerold B. Schnayer, Welsh & Katz, Chicago, IL, for Plaintiff–Appellant in No. 96–3456.

Eric C. Cohen (submitted), Robert B. Breisblatt, A. Sidney Katz, Laurie A. Haynie, John L. Ambrogi, Welsh & Katz, Chicago, IL, for Plaintiff–Appellant in No. 97–1843.

Jerome H. Torshen (argued), Abigail K. Spreyer, Torshen, Spreyer & Garmisa, Chicago, IL, Michael P. Connelly, Kathleen A. Bridgman, Eugene S. Kraus, Charles P. Piacentini, Connelly & Schroeder, Chicago, IL, for Defendant–Appellee in No. 96–3456.

Jerome H. Torshen (submitted), Abigail K. Spreyer, Torshen, Spreyer & Garmisa, Chicago, IL, for Defendant–Appellee in No. 97–1843.

Before RIPPLE, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

This breach of contract and fraud case is before us again, this time in two appeals on the same damages issue. Roboserve, Inc. and Kato Kagaku Co., Ltd., agreed that Roboserve would provide hotel minibars for the Hyatt Regency Chicago hotel. After Kato

revealed to Roboserve that it had contracted with another company for the same service, Roboserve sued for breach of contract, fraud, and wrongful termination. A jury found Kato liable on these claims and awarded nearly $10 million in compensatory and punitive damages. The district court remitted that amount in small part.

In the first appeal, we affirmed the jury's liability findings on each of Roboserve's claims but remanded for a new trial unless Roboserve accepted a substantially reduced damages amount of approximately $2 million. On remand, Roboserve accepted the remittiturs, but the parties disputed whether Kato could deduct from the wrongful termination portion of the damages monthly payments Kato had made since the first trial to Roboserve for use of the minibars. The district court ruled that Kato could, and Roboserve appeals. Meanwhile, Roboserve filed suit against Kato again, alleging breach of contract and unjust enrichment arising from Kato's use of the Robobars after termination of the concession agreement from January 1, 1994 through September 1996. The district court found these claims barred by res judicata. Roboserve also appeals that ruling. We consolidated the second and third appeals and affirm the district court's decisions in each case.

## I.[1]

Roboserve leases and services hotel minibars. Kato owns the Hyatt Regency Chicago ("HRC"), although the Hyatt Corporation manages the hotel. In 1986, Roboserve and Hyatt entered into a written concession agreement under which Roboserve would install its "Robobars" in some of the HRC's rooms, and the HRC would use reasonable efforts to place guests likely to use minibars in those rooms and to encourage those guests to make minibar purchases. In early 1987, Roboserve installed most of the minibars. In late 1987 and early 1988, Roboserve learned that Hyatt intended to contract with ServiSystems, Roboserve's competitor, to install "ServiBars" in other rooms in the HRC. A Hyatt representative wrote to Roboserve to explain that the dual installation was a one-year test to evaluate the respective minibars and that the winner would become the preferred minibar provider for Hyatt hotels.

Roboserve won the test and began negotiations with Hyatt about replacing the ServiBars with Robobars. But the one-year test was a pretext. Without Roboserve's knowledge, when Hyatt announced the test it had already entered into a long-term contract with ServiSystems to install ServiBars in the HRC. The negotiations continued for three years, but in early 1992 Hyatt finally revealed its agreement with ServiSystems and informed Roboserve that their concession agreement had come to an end.

Roboserve sued Kato alleging that Kato (through its agent Hyatt) breached the agreement by failing to allow installation of all the minibars and by failing to properly promote the Robobars, wrongfully terminated the agreement, and defrauded Roboserve of further Hyatt business. The jury found Kato liable on each of these three counts and awarded almost $10 million in damages: $2.1 million for the breach of contract, $850,000 for the wrongful termination, and $7 million for fraud ($1 million in compensatory and $6 million in punitive damages).

In post-trial motions, the district court upheld the jury's verdicts, although it agreed with Kato that the jury calculated the wrongful termination damages award based upon an incorrect starting date. Although the jury had answered a special verdict inquiry that the concession agreement had not begun to run at the time of the termination, leading the jury to award damages for a five-year period beginning to run January 1, 1994, the district court determined that that period had begun on March 1, 1993. Because there was a three-quarters of a year difference between the starting dates, the district court remitted the amount the jury would have awarded for three-quarters of a year of profits, from $850,000 to $722,500 in compensatory damages for wrongful termination.

In our resolution of the first appeal, we affirmed the jury's findings of liability on

---

1. We give here only an overview of the facts from the first appeal. *See* 78 F.3d 266, 271–72 (7th Cir.1996). We recite in full those facts necessary for resolution of the second and third appeals.

each of Roboserve's claims, including the wrongful termination count, but vacated the breach of contract and fraud damages and remanded for a new trial unless Roboserve accepted remittiturs to $1,053,784 on the breach of contract claim and $37,810 on the fraud claim. Roboserve accepted the breach of contract remittitur while it petitioned for certiorari as to whether it could recover punitive damages for Kato's fraud. The Supreme Court denied Roboserve's petition, so Roboserve accepted this court's formulation of the damages award on the fraud count as well.

On remand, Kato moved pursuant to Fed. R.Civ.P. 60(b)(5) & (6) to set the amount to be paid in satisfaction of the judgment on the wrongful termination claim. After Kato terminated its agreement with Roboserve, Kato did not remove the minibars from the HRC, but continued to pay Roboserve, on a monthly basis, a percentage of the revenues received from those minibars. According to Kato, those payments from January 1994 to July 11, 1996 totaled $312,687.22. The Robobars were finally removed from the HRC in September 1996, just before the notice of this second appeal. In its Rule 60(b) motion, Kato asked the district court to offset the wrongful termination damages award by the money Kato paid to Roboserve for Kato's post-trial use of the Robobars.

Roboserve contested the motion, first arguing that the law of the case doctrine precluded Kato's request. Roboserve asserted that Kato raised this exact issue twice before, once in the district court in post-trial motions and once in the first appeal. In briefs to each court Kato stated that "all revenues paid to Roboserve from the use of its bars at HRC after January 1, 1994 [should be] set off against the verdict." The district court concluded that "Kato did not base its short and unsupported argument on Rule 60(b), and it did not set forth the nature or extent of its payments to Roboserve subsequent to the judgment or explain why these payments should be set off against the judgment. Thus, Kato did not present to the courts in the earlier proceedings the same issue it now

raises...." The district court therefore concluded that previous court rulings had not decided this issue.

Roboserve also argued that the amounts Kato paid following the judgment were not made in satisfaction of the judgment. To Roboserve, Kato's payments were simply for its continued use of the Robobars still installed at the HRC, not on the wrongfully terminated concession agreement or in satisfaction of the judgment. The district court determined that when the wrongful termination judgment was entered for Roboserve, Kato would have to pay Roboserve $722,500 (plus interest) to compensate Roboserve for the concession payments Roboserve would have received had the agreement not been terminated. But because Kato continued to use the Robobars and to pay Roboserve the amounts due under the concession agreement, Roboserve received some of the money it was due according to the verdict and judgment on the wrongful termination claim. To allow Roboserve the full amount of the wrongful termination judgment in light of these payments, the district court decided, would allow Roboserve to collect some concession payments as if the parties' agreement had not been terminated, as the verdict and judgment presumed.

Accordingly, on September 5, 1996, the district court granted Kato's Rule 60(b) motion and directed the parties to submit a stipulation of the exact amount remaining to be paid in satisfaction of the judgment on the wrongful termination claim. When the parties could not so stipulate, the district court adopted the figures Kato submitted, and on September 13, 1996 subtracted from the $722,500 (the amount Kato owed to Roboserve) the $312,687.22 Kato paid to Roboserve for use of the minibars from January 1994 to July 1996.[2]

The district court had jurisdiction over this case pursuant to 28 U.S.C. § 1332, as Roboserve is a Delaware corporation with its principal place of business there, Kato is a Japanese corporation, and the amount in controversy easily satisfies the statutory jur-

---

2. This amount did not include approximately $107,000 which Roboserve incurred in mainte-

nance costs on the Robobars during that period.

isdictional requirement. Roboserve appealed from the September 5 and 13, 1996 orders on September 30, 1996. The district court entered its final judgment on remand on November 26, 1996. The appeal was therefore approximately eight weeks premature, as there was not yet a final judgment under Fed.R.Civ.P. 58. This defect was cured, however, when the final judgment was entered. See Fed. R.App. P. 4(a)(2) ("A notice of appeal filed after the court announces a decision or order but before the entry of the judgment or order is treated as filed on the date of and after the entry."); *Harris v. Bellin Mem. Hosp.*, 13 F.3d 1082, 1083 (7th Cir.1994); *Metropolitan Life Ins. Co. v. Cammon*, 929 F.2d 1220, 1222 (7th Cir.1991). Accordingly, this court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

### A. Law of the Case

■■ Roboserve relies on the law of the case doctrine to argue that Kato cannot subtract its post-trial payments to Roboserve from the wrongful termination damages. Roboserve asserts that Kato raised this issue before the district court and this court, but neither granted Kato relief, and that this court rejected Kato's request "by implication" when we upheld the full damage award of $722,500. Roboserve also submits that this court knew that the Robobars remained in the Hyatt. Whether Kato's motion is precluded by the law of the case doctrine is a question of law we review *de novo*. *See In re Meridian Reserve, Inc.*, 87 F.3d 406, 409 (10th Cir.1996).

■■ The doctrine of law of the case is a rule of practice under which "... a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation." 1B *Moore's Federal Practice* ¶ 0.404(1) (2d ed.1974) (footnotes omitted). The law of the case doctrine "governs the weight that interim rulings in a litigation are given in the subsequent stages of that litigation." *Amcast Industrial Corp. v. Detrex Corp.*, 45 F.3d 155, 157 (7th Cir.1995). "If a final judgment had been entered, the case appealed, the judgment reversed, and the case remanded, the trial judge would be required to adhere on remand to the rulings that he had made before the case was first appealed, provided of course that they had not been set aside by the appellate court. Even more clearly would he be required— this is the most elementary application of the doctrine of law of the case—to comply with the rulings of the appellate court." *Williams v. Commissioner of Internal Revenue*, 1 F.3d 502, 503 (7th Cir.1993). "[O]nce an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir.1991).

In the district court post-trial and in this court in the first appeal, Kato made one-sentence requests that the revenues paid to Roboserve after January 1, 1994 should be set off against the verdict. These allusions are insufficient argument to trigger the law of the case doctrine. To begin with, Kato did not make these earlier requests pursuant to Rule 60(b); thus, they did not have the proper procedural basis to be considered, as the judgment already had been rendered. Further, in the previous appeal the record consisted of matters occurring before the judgment, the post-trial motion, and the district court's ruling thereon. There was no record evidence of any payments made and accepted by Roboserve on account of the terminated agreement after January 1, 1994. Indeed, no such evidence could have been presented because the judgment was entered and the post-trial motion made before any payments existed. Without record evidence of any payments made and accepted after January 1, 1994, the issue was not presented as ripe for resolution by this court.

■■ Kato's one-sentence requests were passing references to what should occur on remand. The district court did not rule on this request in its post-trial motions decision. *See* 873 F.Supp. 1124 (N.D.Ill.1995). Nor did this court rule on Kato's request. Nowhere in the first opinion did we expressly consider the circumstances of post-first judgment minibar revenues. It cannot be said we reached a conclusion with regard to them "by

necessary implication," either. Law of the case is limited insofar as it applies only to issues that were decided in the former proceeding but not to questions which might have been decided but were not. *See Morrow v. Dillard,* 580 F.2d 1284, 1290 (5th Cir.1978). Roboserve's argument falls into this latter category. In our previous decision, we decided not to reduce the wrongful termination damages award and affirmed the district court. That does not imply we rendered any decision with regard to post-judgment payments Kato made to Roboserve pending appeal. The parties continued to adhere to the underlying agreement until this court issued its decision and mandate resolving the first appeal. There is no basis for Roboserve's contention that we already decided this issue. *See, e.g., International Union of Oper. Eng., Local Union 103 v. Indiana Construction Corp.,* 13 F.3d 253, 256 (7th Cir.1994) (indication by court of recognition of argument without holding on an issue did not fully decide issue; reliance on law of the case doctrine was misplaced).[3] The district court properly decided this issue.

### B. Deduction of Post–Trial Payments from Wrongful Termination Damages

█ Roboserve also argues that the district court abused its discretion when it granted Kato's Rule 60(b) motion. For Roboserve, those payments were made pursuant to Kato's ongoing obligation toward Roboserve for its continued use of the Robobars, not as payments on the judgment. Roboserve argues that the only way the post-trial payments could be offset against the wrongful termination measure of damages would be if Kato's post-trial performance was identical to the wrongful termination measure of damages, which it was not. Roboserve also points out that according to Kato's own records, the posttrial payments were not made in satisfaction of

the judgment, nor did the payment checks indicate so. Roboserve thus contends that it is being wrongfully deprived of its full $722,500 wrongful termination damages verdict, which we upheld in the first appeal.

Throughout this litigation, including throughout the first appeal, Kato maintained that it had not wrongfully terminated the concession agreement. Pursuant to the terms of that agreement, as long as the HRC used the Robobars, Kato had to, and did, make payments under the contract. Once this court's mandate issued, Roboserve sought return of the Robobars pursuant to the agreement's terms, and Kato delivered them to Roboserve. Roboserve never asked Kato for the Robobars before then, and Roboserve gladly accepted Kato's payments from January 1994, when Kato filed its post-judgment motion, until May 22, 1996, the date of the mandate.

At trial and in the first appeal, Roboserve prevailed on its claim that Kato had no right to terminate the concession agreement. Roboserve also prevailed on its claim that Roboserve could treat Kato's notice of intent to terminate the agreement as a total anticipatory breach, putting an end to the agreement for purposes of performance. By seeking $722,500 in damages for wrongful termination, as well as to retain Kato's $312,687.22 in ongoing payments after the judgment, Roboserve seeks payments for the agreement that had been terminated as well as if the agreement had not been terminated. Roboserve wants to have the best of both worlds. It is inconsistent to argue that the contract was terminated but also that the agreement's provisions should be enforced. To allow Roboserve the full amount of the wrongful termination damages award in light of the concession payments Kato made would allow Roboserve to collect these monies as if the

---

3. Could the parties have been operating under a new agreement which, even after the original judgment in the district court, obligated Kato to these further payments? Not according to them. At oral argument, both parties explained that they were operating under the original concession agreement. Obviously, Kato did so consistent with its position that it had not terminated the agreement. This position did not alter until

this court's mandate was issued on the first appeal affirming the district court's conclusion that Kato in fact had wrongfully terminated the concession agreement. Roboserve argued that the terms of the parties' concession agreement—specifically, § 2, ¶ 2—controlled, and thus that the terms under which the parties had operated all along were still in effect.

parties' agreement had not been terminated. Yet the jury's verdict, and the first judgment in this case, presumed such a termination. Roboserve's reasoning would grant it a windfall: $722,500 in damages for Kato wrongfully terminating the concession agreement, and then when Kato did not terminate, an additional $312,687.22 for not doing so.

Kato did not waste any time after we issued our opinion in moving to set the judgment amount for the wrongful termination damages. About two weeks after the mandate was issued, Kato moved under Rule 60(b) for the offset. Thus, there is no mitigation issue: Kato did not wait around to collect money, and Roboserve cannot claim that Kato dallied and allowed the judgment to be reduced. Instead, upon notification of the case's status after appeal, Kato notified Roboserve that they would take the bars out of the rooms, and they did so. Kato "stopped the bleeding."

Kato's Rule 60(b)(5) motion here is proper. Legally and equitably, there should be a set-off. To conclude otherwise would permit a double recovery. Kato acted consistently with its position of non-termination throughout. Roboserve did not when it accepted the ongoing payments from Kato. Roboserve could have refused the payments under its theory (upon which it ultimately succeeded) that Kato had wrongfully terminated the agreement. Rather than gamble, Roboserve accepted the payments. Now it cannot be heard to seek the same monies twice. The district court did not abuse its discretion when it granted Kato's motion.[4]

### III.

■ One month after the district court on remand set the exact amount remaining to be paid in satisfaction of the judgment on the wrongful termination claim, and two weeks after Roboserve filed the second appeal, decided *supra* at II., it sought leave pursuant to Fed.R.Civ.P. 15(d) to amend its complaint in that case to add claims for breach of contract and unjust enrichment arising from Kato's use of the Robobars after termination of the concession agreement from January 1, 1994 through September 1996. The district court orally denied Roboserve's motion as untimely.

Accordingly, Roboserve filed a second case, the subject of this third appeal. The first ten paragraphs of the complaint in the second case are nearly identical to the second amended complaint filed in the first case in June 1993. In Count I of the second case, Roboserve claims that Kato breached the concession agreement by not returning the minibars in a timely manner and by failing to comply with the agreement's reasonable efforts provision from January 1, 1994 through September 25, 1996. In Count II, Roboserve charges that Kato unjustly retained and used the minibars from January 1, 1994 through September 24, 1996 to Roboserve's detriment, and that Kato did so without properly compensating Roboserve. Kato responded to the second case by moving for summary judgment. The district court (by a different district judge than who on remand resolved the first case) granted Kato's motion, finding the second case barred by res judicata:

> The essential facts that surround Roboserve's present complaint all derive from the concession agreement, its breach, and the subsequent use of the Robobars in the HRC after the concession agreement was terminated. When this case first came to trial ... Roboserve was ... required to bring its cause of action relating to the removal of the Robobars at that time or be barred from bringing it at a later date since the issue could have been raised at that time.

> [Also,] these claims should have been brought at the time Kato brought its Rule 60(b) motion. ... In the present case Roboserve seeks payment for the use of the

---

4. Roboserve also points out that it incurred maintenance costs in connection with the Robobars of approximately $107,000 from January 1, 1994 until their removal. Roboserve first made this claim seven days after the district court granted Kato's Rule 60(b) motion, and thus did not do so in a timely or proper manner. Also, the maintenance costs appear to have been taken into consideration by Roboserve's expert when he calculated the wrongful termination damages. Thus, we do not conclude the district court abused its discretion in refusing to allow these deductions from the judgment amount on this claim.

Robobars and damages for failing to remove the Robobars at the time the agreement was terminated for the same period of time that was at issue in the Rule 60(b) motion. In fact, [the district court in the first case] ruled that these very payments Roboserve now seeks, were to be used to offset the wrongful termination award.

Roboserve moved to reconsider this decision, but the district court denied the motion, and Roboserve appealed. This court consolidated this third appeal with the second appeal already under advisement. We review the district court's ruling *de novo*. *Crop–Maker Soil Services, Inc. v. Fairmount State Bank*, 881 F.2d 436, 438 (7th Cir.1989) (standard of review for grant of summary judgment on ground of res judicata).

## IV.

"The doctrine of res judicata (claim preclusion) requires litigants to join in a single suit all legal and remedial theories that concern a single transaction." *Perkins v. Board of Trustees of the Univ. of Illinois*, 116 F.3d 235, 236 (7th Cir.1997). "For res judicata to apply in federal court three requirements must be met: (1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits. . . . In the first requirement, a cause of action consists of a 'single core of operative facts' which give rise to a remedy." *Golden v. Barenborg*, 53 F.3d 866, 869 (7th Cir.1995) (citations omitted). "Th[is] usual answer-'common core of operative facts' poses questions of its own. Because the function of res judicata is to require the joinder of all legal challenges to a wrong, and all claims for relief arising out of those events, *without* compelling the joinder of claims arising from separate wrongs, . . . claims 'based on the same, or nearly the same, factual allegations' must be joined." *Perkins*, 116 F.3d at 236–37 (citations omitted; emphasis in original); *see also Brzostowski v. Laidlaw Waste Systems, Inc.*, 49 F.3d 337, 338–39 (7th Cir.1995). "Res judicata, however, operates not only as a bar to the further litigation of matters decided in the prior action, but also to any issues which could have been raised." *Golden*, 53 F.3d at 869–70 (citations omitted).

The parties are the same in these two cases and the district court entered a final judgment in the first case. At issue is the identity of the causes of action in the two cases. Roboserve contends that res judicata cannot bar the claims in the second case because they relate to events that occurred from January 1994 to September 1996, after the trial was completed in the first case; thus, they could not have been filed in the first complaint. Roboserve also argues that Kato should be collaterally estopped to rely on the doctrine of res judicata because when Roboserve attempted to amend its complaint in the first case, the district court said the claims were not related. On the other hand asserts Kato, the district court properly concluded that Roboserve could have brought its claim arising from the non-removal of the minibars from the HRC during the first trial, or at least Roboserve could have done so when on remand Kato moved for relief pursuant to Fed.R.Civ.P. 60(b). Kato also submits that Roboserve raised the same claims in response to Kato's Rule 60(b) motion on remand in the first case. Kato disputes that it could be collaterally estopped to invoke the doctrine of res judicata.

We have no trouble finding that the wrongful termination count in the first case and the two claims in this second case arise from the same transaction and are "based on the same, or nearly the same, factual allegations": the dispute over how to label the revenue generated by use of the minibars at the HRC after the wrongful termination of the concession agreement. The undisputed facts bear this out. When the first case went to trial, the contract term for Kato to timely deliver the minibars was deemed breached, and Roboserve could have demanded removal of the minibars at that time. It chose not to. Roboserve's contention that the claims in the second case arose after it filed the first case does not take into account what had already occurred when Roboserve amended its complaint to claim wrongful termination. Kato had issued notice of the end of the parties' agreement, and Roboserve had treated that notice as a total anticipatory breach, sought damages resulting from that breach for a full five-year term, and on that theory received a

sizable award from the jury (which the district court later remitted in part). When the jury issued its verdict in November 1993, instead of asking for timely return of the minibars, Roboserve continued to accept Kato's payments of revenues generated by the minibars while they remained at the hotel until Kato, years later, sought to arrange for their removal. When after trial Roboserve failed to seek an order for removal of the bars, it assumed the risk that its continued acceptance of payments for the bars would be credited against the wrongful termination damages.

Roboserve also could have brought the claims in the second case when, on remand after the first appeal, Kato moved to offset its concession payments against the damages award for wrongful termination. To decide that motion, the district court addressed the payment of revenues from the minibars from January 1994 through September 1996, after the agreement was terminated. In this second case, Roboserve seeks the same type of damages for the same wrong over the same period of time; it just does so under a different legal theory. When, in response to Kato's motion, Roboserve pointed to Kato's failure to return the minibars in breach of the agreement, Roboserve could have made its claim for that failure. Again, it chose not to. " 'Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost.' " *Lim v. Central DuPage Hosp.*, 972 F.2d 758, 763 (7th Cir.1992), quoting *In re Energy Cooperative*, 814 F.2d 1226, 1230 (7th Cir.1987).

Finally, we do not agree with Roboserve that Kato is collaterally estopped to invoke res judicata as to the claims in the second case. On October 16, 1996—after Roboserve appealed the September 5 and 13, 1996 orders setting off against the wrongful termination damages those amounts paid after the December 1993 judgment—Roboserve sought leave to amend its complaint in the first case to add as Counts IV and V the claims set forth in this second case. The district court orally denied this motion as "untimely." The district court went on to state that these claims "should be the subject of a different lawsuit, . . . another place, an-

other time. I don't think it is in any way related to the case." Kato's attorney then went on to argue that the issues were in fact related. The court and the attorneys then discussed partial payment and appealability; no one pursued further the questions of the timeliness of the proposed amendment, or the relatedness of the two cases.

We do not consider the judge's remarks concerning the relatedness of the cases a substantive ruling on Kato's res judicata defense. He correctly denied the motion to amend the complaint—nearly three years after the case had been tried, after the first appeal had been concluded, and after Kato's Rule 60(b) motion for the set-off had been granted-as untimely. In Roboserve's motion to add these counts to its complaint, it stated that pursuant to Northern District of Illinois Rule 2.31, the matters appeared to be related. The district judge's comments beyond his ruling that the proposed counts were untimely appear to have been directed to the applicability of that local rule. At most these statements constitute dicta not binding on the district judge resolving the second case, as he concluded. Moreover, if Roboserve disagreed with the district court's denial of leave to amend to include these claims, it could have appealed that issue; it did not. Regardless, the substance of these claims is the same as at issue in the Rule 60(b) proceeding, resolved above. Because each of the three requirements of the res judicata doctrine are satisfied, the district court correctly dismissed Roboserve's second suit on that basis.

## V.

Kato's motion for the concession payments to offset the wrongful termination damages award was properly granted, and Roboserve's second case is precluded under the doctrine of res judicata. The district court's grant of Roboserve's Rule 60(b) motion is affirmed, as is the court's grant of summary judgment on Roboserve's second case. Roboserve shall pay costs on both appeals.

AFFIRMED.