Carolyn G. KOCHERT, M.D., Plaintiff,

v.

GREATER LAFAYETTE HEALTH SERVICES, INC., d/b/a St. Elizabeth Medical Center and d/b/a Lafayette Home Hospital, Anesthesiology Associates, P.C., and John Walling, Defendants.

No. 4:01CV0027 AS.

United States District Court, N.D. Indiana, Hammond Division.

Dec. 29, 2004.

Michael B. Brohman, Miles J. Zaremski, Ron S. Brand, Lincolnwood, IL; Randall L. Vonderheide, Lafayette, Robert P. Kinsella, Schererville, IN, for Plaintiff.

Larry R. Fisher, Stephen R. Pennell, Lafayette, IN; Andrew M. McNeil, Beth L. Riga, Judy L. Woods, Ronald E. Elberger, Indianapolis, IN, for Defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

On September 18, 2001, Plaintiff Dr. Carolyn Kochert, M.D., filed an amended complaint in this Court alleging various antitrust violations under both federal and state laws. On April 30, 2004, Defendant Greater Lafayette Health Services, Inc. ("GLHS") filed a Motion for Summary Judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. On that same day, Defendant Anesthesiology Associates, P.C. ("AA") filed its own motion for Summary Judgment.

This case has now been pending in this Court since 2001 and, in spite of Plaintiff's counsels' protestations to the contrary, a massive discovery effort has advanced. It is obviously the serious burden of this Court to look very carefully under Rule 56 at this record. This case has received abundant attention from this Court, including the highly qualified assistance of a United States Magistrate Judge. This Court conducted extensive proceedings in October, 2004 and entered a series of evidentiary rulings, including several challenges to expert witnesses under the Daubert standard, on or about November 15, 2004. This Court also heard oral arguments on these Motions for Summary Judgment in South Bend, Indiana for a period of over two hours on November 26, 2004.

While listening to those arguments, especially of the ones for the Plaintiff, this court could not escape the impression that either a contract case, due process case, or employment discrimination case, was being argued. The plain fact is that this case is none of the above. It is absolutely essential to revisit first principals regarding Antitrust requirements here.

When it is all said and done, and in spite of the best efforts of very able counsel, this Plaintiff has simply failed to present a jury issue under the Seventh Amendment in regards to her claims of Antitrust violation.

This Court is also aware that the bundle of rulings entered on November 15, 2004 include some limited exclusions of evidence which remain binding on the parties and which are followed here. Though the Court expressed judgments on the reliability and methodology of expert witness testimony, it did not pass judgment on

whether those opinions were persuasive or sufficient to create a genuine issue of material fact.

Finally, this Court is compelled to give serious notice as background and otherwise to earlier litigation spawned by Kochert in both state and federal courts. Kochert filed her first federal lawsuit in this Court in 1998 in Cause Number 4:98CV0053. She filed a complaint in the Tippecanoe Circuit Court, under Cause No. 79C01–0001–CP–0007, in January 2000. In both cases, Kochert sought to recover damages from the Defendants on various theories arising out of contract disputes with AA. In both the 1998 federal court case and the 2000 state court case, Kochert's claims against the hospital were dismissed on summary judgment.

## BACKGROUND

The Plaintiff, Carolyn Kochert, M.D., first began practicing anesthesiology in Lafayette, Indiana in 1985. From 1985 to 1994, Kochert practiced anesthesia at both Lafayette Home Hospital ("HH") and St. Elizabeth's Medical Center ("SEMC"). On August 9, 1994, Defendant Anesthesia Associates ("AA") and HH entered into a contract for AA to be the exclusive provider of anesthesia services at HH. After being offered the exclusive services contract for anesthesia services at HH, AA offered each anesthesiologist with current privileges at HH a subcontract to provide anesthesia services at HH. Kochert was given such a subcontract. At some point during 1998, AA's Board of Directors voted not to renew Kochert's subcontract with AA after its expiration in February 1998. In 1998, HH and SEMC merged and GLHS took over administration of both hospitals at the end of that year. In April 1999, the labor and delivery unit at SEMC was closed. At the beginning of 2001, GLHS contracted with AA to provide an-

esthesia services at SEMC beginning on June 1, 2001.

## STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir.1998). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting FED.R.CIV.P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir.1998). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel*, 160 F.3d 1139 (7th Cir.

1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918 (7th Cir.1994); nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir.1996). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252–55, 106 S.Ct. 2505. Applying the above standard, this Court will now address the present motions.

## DISCUSSION

### I. ANTITRUST STANDING

Kochert seeks to recover damages under Section 4 of the Clayton Act, for alleged violations of Section 1 and 2 of the Sherman Antitrust Act. Both antitrust injury and standing are necessary to proceed under Section 4. *Greater Rockford Energy and Technology Corp. v. Shell Oil Co.*, 998 F.2d 391, 395 (7th Cir.1993). "It is now well settled that in order to have standing to prosecute private antitrust claims, plaintiffs must show more than the defendants' conduct caused them an injury." *Balaklaw v. Lovell*, 14 F.3d 793, 797 (2d Cir.1994). Instead, "[p]laintiffs must prove an antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful." *Id.; accord Indiana Grocery v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1416 (7th Cir.1989). Kochert has not suffered an antitrust injury and therefore she does not have antitrust standing.

Kochert has conceded that the non-renewal of her contract in 1998 did not cause her to sustain any antitrust injury. Kochert Memo. in Opposition to Defendants' Rule 12 Motions to Dismiss at p. 35. Instead, Kochert contends that there was "a sequence of events that, when combined, creates anti-competitive concerns that might not have been present had those three events not been combined." Kochert Brief p. 7. Kochert contends that a combination of the nonrenewal of her subcontract by AA, the consolidation of the OB unit at SEMC with the OB unit at HH in April 1999, and awarding the exclusive contract to SEMC to AA in June 2001 form the basis of her antitrust claim. Kochert was no longer in the business of providing anesthesia services by June 1, 2001, however. Kochert had opened her own pain management practice and was doing pain management on a full time basis by August 1, 2000. Therefore, Kochert could not have sustained any antitrust injury which was caused by GLHS's decision to award the exclusive contract at SEMC to AA in June 2001. *See Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F.Supp.2d 948, 967 (S.D.Ohio 2000). This fact is confirmed by Kochert's damages expert, Hoffman, who determined that all of Kochert's damages were caused by the nonrenewal of her subcontract with AA in 1998.

Furthermore, Kochert fails to establish an antitrust injury because the injury alleged was not the type of injury the antitrust laws were intended to prevent. To sustain an antitrust injury there must be more than mere harm to a competitor. Rather, there must be harm to competition. The Supreme Court has stated that the plaintiff's injury must be "an injury caused by anti-competitive behavior as opposed to mere economic loss." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429

U.S. 477, 488–89, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Kochert's alleged injuries are to her as a competitor, not injuries to competition.

■ Kochert is unable to show direct anticompetitive effects on the price, quantity or quality of anesthesia services caused by the defendants. To show an antitrust injury, Kochert must prove that the exclusive contract affected the price, quantity or quality of anesthesia services, not just her own welfare. *Davies v. Genesis Med. Ctr.,* 994 F.Supp. 1078, 1093 (S.D.Iowa 1998) The harm Kochert alleges, working more hours at SEMC and changing her specialty, is indirect and cannot be tied directly to the alleged anticompetitive acts or their effects-raising anesthesia prices and diminishing anesthesia services. Kochert did not pay for anesthesia services and was not a provider of anesthesia services at all relevant times. Thus, Kochert has not shown that she was harmed in any way by any anticompetitive effect on the price, quantity or quality of anesthesia services, even if these effects are assumed to exist.

## II. KOCHERT'S TYING CLAIMS

Kochert alleges in Counts I and II of her complaint that the exclusive contract between GLHS and AA constitutes an unlawful tying arrangement which is both a per se violation of Section 1 of the Sherman Antitrust Act as well as an unreasonable restraint of trade under the rule of reason.

■ Kochert's allegations of a per se violation cannot survive summary judgment. This Court finds the decision of

*Jefferson Parish Hospital District No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2, (1984) instructive on this issue. In *Jefferson Parish,* the Court concluded that a per se condemnation of exclusive anesthesia service agreements is appropriate only if there was evidence of forcing a purchaser to do something he would not otherwise do. *Id.* at 15, 104 S.Ct. 1551. Patients are not forced to purchase anesthesia services they would otherwise forego when having surgery or delivering a baby. Thus, Kochert's reliance on a per se analysis is misplaced.

■ Kochert's claims under the rule of reason are also deficient. In *Carl Sandburg Village Condominium Association No. 1 v. First Condominium Development Co.,* 758 F.2d 203, 207–210 (7th Cir.1985), the Seventh Circuit held that an illegal tying arrangement would not be found where the alleged tying company has no economic interest in the sales of the tied seller.[1] AA billed its patients separately for AA's services. GLHS did not receive fees generated by AA. Any economic benefits which GLHS may have received from having exclusive contracts with AA would be indirect.[2] Therefore, Kochert's illegal tying claims must fail.

## III. SHERMAN ACT CLAIMS

### A. Group Boycott Claims

■ In Counts III and VIII, Kochert alleges that AA/GLHS contracts constitute a group boycott of her. Group boycotts are illegal only if used to enforce agreements that are themselves illegal. *Collins v. Associated Pathologists, Ltd.* 844 F.2d

---

1. This rule applies with equal force to a per se violation analysis. *Carl Sandburg,* 758 F.2d at 207–210.

2. Kochert claims that GLHS billed its patients directly for anesthesia services and derived a profit from such services. Deriving a profit from the sale of supplies related to anesthesia services does not create the requisite economic interest. Eberle dep. pp. 216–226.

473, 479 (7th Cir.1988) (citing *Marrese v. American Academy of Orthopaedic Surgeons,* 726 F.2d 1150, 1155 (7th Cir.1984)) en banc (rev. on other grounds, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)). An exclusive contract between a hospital and a group of physicians to provide professional services is not illegal per se. *Collins,* 844 F.2d at 479–80. Such exclusive contracts amount to nothing more than a decision by a customer to enter into an exclusive dealing agreement with a supplier, even though the supplier's competitors are "foreclosed" from that customer for the life of the contract. *Minnesota Association of Nurse Anesthetists v. Unity Hospital,* 208 F.3d 655, 659–60 (8th Cir. 2000). Indeed, every decision to purchase goods or services results in winners and losers as the decision to buy always excludes other potential suppliers. "It is perfectly permissible under the Sherman Act for one business entity to refuse to deal with another business entity." *McMorris v. Williamsport Hospital,* 597 F.Supp. 899, 912 (M.D.Pa.1984).

### B. Sherman Act Section 1 Claims Based Upon Unreasonable Restraint of Trade

■ To meet her initial burden of proving an antitrust violation under the rule of reason in a Section 1 claim, Kochert must show that the alleged antitrust violation has produced anti-competitive effects within the relevant product and geographic areas. This can be done in two ways. First, a plaintiff may delineate a relevant market and show that the defendant has enough market power to significantly harm competition. Second a plaintiff may demonstrate that the challenged practice has actually produced negative anti-competitive effects. *FTC v. Indiana Federation of Dentists,* 476 U.S. 447, 460–61, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986). *Minnesota Association of Nurse Anesthetists v. Unity*

*Hospital,* 5 F. Supp 2d. 694, 706, 707 (1998). Kochert has failed to create a genuine issue of material fact as to whether the defendants caused any actual harm to competition, or whether GLHS has sufficient market power to restrain trade in any relevant product or geographic market.

■ Kochert has failed to demonstrate that an exercise of market power has caused harm to competition through an increase in the price of anesthesia services. There is no evidence to suggest that anesthesia prices involved in this case have increased beyond those in Lafayette and other parts of Indiana. Kochert's own expert, Dr. Seaman, concedes that there is "no particular evidence of nominal rates that would suggest an exercise of market power." Seaman dep. p. 60. Seaman instead suggests that a decrease in quality may have had an effect on the real price, which he defines as price adjusted for quality. Seaman pp. 50–51. Therefore, Kochert must be able to show a decrease in the quality of care that occurred after the exercise of market power. This Kochert has failed to do. She makes much of incidents which she claims demonstrate a reduction in the quality of care, but fails to show that those incidents did not occur or were less prevalent before the exercise of market power. *See Minnesota Association of Nurse Anesthetists,* 5 F.Supp.2d at 707. Even if Kochert could somehow show that the quality of care is substandard, she must still show that this reduction has occurred as a result of anti-competitive behavior. Furthermore, Kochert has failed to show that there has been actual harm to competition from a reduction in quality because patients were able to choose other hospitals and anesthesiologists within the area. *See Flegel v. Christian Hospital,* 4 F.3d 682, 688–89 (8th Cir.1993) (citing *Jefferson Parish Hospital*

*v. Hyde,* 466 U.S. 2, 29–30, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984)).

■ Because Kochert failed to show actual detrimental effects, she must demonstrate that the Defendants have market power within a well-defined relevant market. To show that a defendant has sufficient market power to harm competition, a plaintiff must first define the relevant product and geographic markets affected by the alleged uncompetitive activity.[3]

In defining the relevant geographic market, Kochert's expert on markets, Dr. Seaman, based his analysis on the Elzingha–Hogerty test ("E–H test"). This test calculates a LIFO, a percentage of patients who come from within the geographic area who go to GLHS, as well as LOFI, the percentage of patients from outside the geographic area who go to GLHS. The E–H test. The E–H test is used to determine whether a hypothetical geographic market is self-contained.

It seems clear that the relevant geographic market cannot be defined as narrowly as Tippecanoe County, which would leave HH and SEMC as the only hospitals in the geographic market. As noted by the Seventh Circuit in *Dos Santos v. Columbus–Cuneo–Cabrini Medical Ctr.,* 684 F.2d 1346, 1353 (7th Cir.1982) and *BCB Anesthesia Care Ltd. v. Passavant Memorial Area Hospital Association,* 36 F.3d 664, 668 (7th Cir.1994) (stating, there is "reason to doubt whether the relevant market can be sliced so small as to embrace only a single hospital"). As Judge Posner stated in *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic,* 65 F.3d 1406, 1412 (7th Cir.1995), "[i]f an entire county has only 12 physicians, one can hardly expect or want them to set up competition with each other." 65 F.3d at 1412

■ According to Kochert's expert, Dr. Seaman, the relevant geographic market would include Tippecanoe County and the seven counties surrounding Tippecanoe County. Seaman dep. pp. 226–228. This Court finds that Kochert's attempt to define the geographic market as Tippecanoe and the surrounding counties defines the market too narrowly for two reasons.

First, Kochert attempts to average the LIFO and LOFI to reach a combined figure of 80%. Even if this averaging approach is accepted, there is no judicial precedent identified by Kochert that would allow this Court to accept a geographic market based upon a LIFO, or LOFI, or combination thereof of only 80%. *See State of California v. Sutter Health System,* 130 F.Supp.2d 1109, 1123 (N.D.Cal. 2001) (LIFO and LOFI of 85% found to be insufficient); *Gordon v. Lewistown Hospital,* 272 F.Supp.2d 393, 428 (M.D.Pa.2003) (Court rejected geographic market based on LOFI of 84% and LIFO of 77.8%).[4]

■ Second, Kochert's analysis of the geographic market ignores the commercial

---

**3.** The parties devote much time and energy to disputing the proper relevant product market. Even if the relevant product market is defined as anesthesia services, rather than anesthesiologists, Kochert has failed to adequately define the relevant geographic market involved, and therefore her claim cannot survive summary judgment on this point.

**4.** Kochert will no doubt make much of the fact that Seaman's testimony was deemed by this Court, in the context of a *Daubert* challenge, to be reliable. When that ruling was made, however, the methodology employed by Seaman and its reliability was at issue, not the results of his tests. The Order allowing Seaman's testimony, issued on or about November 15, 2004, was explicit in stating that courts have rejected LIFO and LOFI measurements similar to those offered by Kochert, while at the same time finding those expert opinions at least sufficiently reliable to warrant the courts' consideration.

realities of the Lafayette, Indiana area. A central question in determining a geographic market is "where does a potential buyer look for potential suppliers of the service—what is the geographical area in which the buyer has, or, in the absence of monopoly, would have, a real choice as to price and alternative services?" *United States v. Grinnell Corp.*, 384 U.S. at 588–89, 86 S.Ct. 1698; *Marshfield Clinic,* 65 F.3d at 1410. The geographic market is determined by the commercial realities faced by consumers. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 452–56, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Kochert's proposed geographic market includes portions of counties where residents would be required to drive an hour or more to reach Lafayette. At the same time, Kochert excluded hospitals in Logansport and Lebanon, which are roughly 45 minute drives to Lafayette, as well as hospitals in Rensselaer, Kokomo, Tipton, and Indianapolis which are only about an hour drive from Lafayette. Seaman's own data shows that a significant number of patients living within his proposed eight county area travel to other hospitals outside the area as almost 24% of the persons living in Tippecanoe, Montgomery and Clinton Counties already go to hospitals in Marion County for hospital services.[5] At the end of the day, Kochert's market analysis and the economic realities of the area simply do not add up to create a sufficient antitrust claim on this issue.

 If a plaintiff has successfully met her initial burden under the traditional rule of reason, the burden then shifts to the defendant to show that the GLHS contract promotes a sufficiently pro-competitive objective. *United States v. Brown University*, 5 F.3d 658, 669 (3rd Cir.1993).

Even if Kochert successfully satisfied her initial burden, GLHS has demonstrated that its actions served a pro-competitive objective. The evidence demonstrates that GLHS' decision to consolidate the OB unit at SEMC with the OB unit at HH was done for legitimate business purposes to improve efficiencies, reduce costs, and improve quality of care. The number of deliveries at HH and SEMC in 1997 and 1998 led to an underutilization of the facilities and staff at those hospitals. GLHS has realized a substantial savings as a result of this consolidation.

## IV. Conspiracy to Monopolize

 Kochert alleges in Count IV that AA and GLHS conspired to grant AA a monopoly in the provision of hospital surgical and obstetric anesthesia in violation of Section 2 of the Sherman Act. There can be no finding of conspiracy under Section 2 of the Sherman Act unless there is "evidence that two or more parties have knowingly participated in a common scheme or design to accomplish an anticompetitive purpose." *Wagner v. Magellan Health Services, Inc.*, 121 F.Supp.2d 673, 679 (N.D.Ill.2000) (citing *Albrecht v. Herald Co.*, 390 U.S. 145, 149, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968); *American Tobacco Co. v. United States*, 328 U.S. 781, 809–10, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946)). To establish a Section 2 conspiracy to monopolize, a plaintiff must prove: (1) a specific intent on the part of the defendants to achieve monopoly power; (2) predatory or anti-competitive conduct directed at accomplishing this purpose; and (3) a probability that the attempt will be successful. *Indiana Grocery v. Super Valu Stores*, 864 F.2d 1409, 1413 (7th Cir.1989). The evidence in this case establishes clearly that

5. Although this Court stated in its November 15, 2004 Order regarding the admissibility of Seaman's testimony that Seaman did conduct a "dynamic analysis", the results of that analysis are not persuasive in light of the economic realities of the Lafayette area.

the decision to consolidate the OB unit at SEMC with the unit at HH was made unilaterally by the GLHS without any input from AA. This decision was made to reduce expenses, improve efficiency, and improve the quality of care. Therefore, the requisite specific intent was lacking. Furthermore, the facts relating to the decision not to renew Kochert's subcontract with AA have been established in the Tippecanoe County Court, and this Court may not now revisit those findings.

## V. Count V Group Boycott Theory

Kochert alleges in Count V that AA's exclusive contract with HH expired in August 1996, that AA failed to renew it properly before August 1998, and that as a result, the defendants wrongly excluded her from practicing anesthesiology at HH on the basis of this ineffective agreement between 1996 and 1998.

As mentioned earlier, Kochert brought suit in state court seeking to recover damages against HH and AA because of the alleged nonrenewal of her subcontract in 1998. Summary judgment was entered in favor of HH and AA. Because there is identity of the causes of action, identity of parties and a final judgment adverse to Kochert, this count is barred by *res judicata*. *Roboserve, Inc. v. Kato Kagaku Co., Ltd.* 121 F.3d 1027, 1034 (7th Cir.1997). Furthermore, even if this Court were to revisit this claim, it is clearly without merit.

## VI. Essential Facility Claim

Kochert alleges in Count XI that she has been denied access to practice at an essential facility, SEMC and HH, and that this refusal to grant her access to an essential facility violates Section 2 of the Sherman Act. To establish an essential facility claim, a plaintiff must show: 1) control of the essential facility by a monopoly; 2) a competitor's inability practically or reasonably to duplicate the essential facility; 3) the denial of the use of the facility to a competitor; and 4) feasibility of providing the facility. *MCI Communications Corp. v. American Telephone and Telegraph Co.*, 708 F.2d 1081, 1132–33 (7th Cir.1983), *cert. denied*, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983). To establish denial, the plaintiff must show that there is no feasible alternative to the facility, and that denial to the facility would cause the plaintiff a "severe handicap," rather than simple inconvenience or economic loss. *City of Chanute, Kansas v. Williams Natural Gas Co.*, 955 F.2d 641 (10th Cir.1992).

Kochert's claims fail because of the availability of alternative facilities. According to Kochert's own expert, Dr. Seaman, agreed that it was valid to include all surrounding counties in the relevant geographic area, and it is undisputed that there are other facilities in that area which also provide inpatient and obstetrical anesthesia services. Kochert is not foreclosed from providing anesthesia services to patients in this market. Therefore, she is unable to establish an essential element of her claim and summary judgment is appropriate.

## VII. Kochert's State Antitrust Claims

Kochert's claims in Counts VI, VII, VII, IX, and X of her amended complaint are based on Indiana antitrust statutes. Because these counts are duplicative of Count I through V of her amended complaint, and because the same facts and theories relied upon by Kochert for her federal antitrust claims are relied upon in her state claims, those claims are not sufficient to withstand summary judgment.

## CONCLUSION

Based on the foregoing, no genuine issue of material fact exists in regards to the

claims brought by this Plaintiff and therefore such claims cannot be sustained. Summary judgment is thus **GRANTED** in favor of the Defendants and against Plaintiff on all counts and all claims. Each party will bear its own costs and fees. This is to be considered as a final appealable judgment in this case. **IT IS SO ORDERED.**